UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Docket No. BK-N 05-54727-GWZ |
| SCOTT K. GREENE, | Reno, Nevada<br>May 24, 2006 |
| Debtor. | 9:33:20 a.m. |

HEARING
OBJECTION BY CREDITOR
RENO WELLS TO DEBTOR
SCOTT GREENE'S CLAIM
OF HOMESTEAD EXEMPTION
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GREGG W. ZIVE
UNITED STATES BANKRUPTCY JUDGE

Electronic Court Recorder: Sylvia Tilton

Transcription: Typewrite Services Inc.
P.O. Box 5804
Sparks, Nevada 89432-5804

Proceedings recorded by digital sound recording, transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For the Debtor: | JOHN A. WHITE, JR., ESQ.<br>335 West First Street<br>Reno, Nevada 89503 |
| For Reno Wells: | GEOFFREY L. GILES, ESQ.<br>527 California Avenue<br>Reno, Nevada 89504 |
| Also Present: | RENO WELLS |
| | SCOTT K. GREENE |

COURTROOM DEPUTY: All rise.

THE COURT: Please be seated.

In the matter of Scott Greene.

MR. WHITE: Good morning, your Honor. John White for the debtor.

MR. GILES: Good morning, Geoff Giles for Reno Wells, your Honor, who is present in court.

THE COURT: Thank you.

MR. WHITE: Mr. Greene is present as well.

THE COURT: Well, this is not the time for an evidentiary hearing. We've set it for ten minutes.

So let's see if we can do this in ten minutes. I doubt it.

I have read the objection to the claim of exemption filed on April 12;

And included in there were pleadings that had previously been filed in another case;

The prior case filed by the debtor bore Number 04-52579. It was a Chapter 13;

And a hearing had been set regarding an objection to claim of exemption filed in that case;

That hearing date was January 27, 2005, at 2:00 p.m. and set for thirty minutes, a far more realistic time;

And one of the exhibits attached to the objection in this case--which is a Chapter 7 that was filed on

October 15, 2005, so shortly after the dismissal of the Chapter 13--is a supplemental brief in support of objection to claim of exemption in the prior case;

The trustee's supplemental points and authorities regarding objection;

So I have read them and I will take judicial notice of the claimed exemption, including the schedules and the statement filed by the debtor in the prior case. Because I think they go to credibility if nothing else.

And I've seen pictures of the site;

This matter has been properly noticed;

Filed on May 1st was the debtor's reply in support of homestead exemption, which was the opposition to the objection. I've read it;

I've read the declaration of Lee Lawrence that was filed on May 1st in support of the debtor's exemption;

The declaration of Brian Quaard (pho) that was filed in support of the homestead exemption on May 1st;

The declaration of the debtor's brother, Eric Bransness (pho) filed on May 1st;

The declaration of the debtor and the exhibits attached thereto also filed -- oh, this one was actually filed on May 2nd;

I would point out that both our local rules, the Federal Rules of Civil Procedure and numerous case law

require exhibits to be based upon personal knowledge;

They're not intended to be argument. They're not intended to provide legal conclusions;

I have some question when one tries to put in an affidavit what somebody else concluded;

Paragraph 13 of the May 2nd Greene declaration states at Page 4, on line 1:

"However, I believe Mr. Stone reasonably concluded from my statement I was no longer living on the property."

I guess that could come in as a belief that the debtor had;

And clearly it shows, in my opinion, that what he told the County, while it may have been technically accurate, it created an impression that was not accurate;

And that the County doubtlessly believed he was no longer living in that property even though he was;

Which is why he called later;

I read errata to Schedule C that was filed on April 26, 2005, in this case, where the claimed exemption is now to be based upon NRS 21.090.1(l) and not 1(m). Which makes sense because 1(m) is clearly not applicable. Because the debtor owns the property;

I read the reply filed on May 17th by Mr. Giles on behalf of his client;

And attached thereto were exhibits that I've also read, including a supplement to Schedule C that had been earlier filed in this case by the debtor, adding the 1976 travel trailer as property claimed as exempt;

That's that travel trailer that's on the property at 450 Alamosa Drive;

I have read the declaration of Erica Jones from the Washoe County District Attorney's Office that was filed on May 17th;

And finally I have read the supplemental declaration of the debtor that was filed yesterday but I just received this morning;

And I notice once again it contains legal conclusions;

At lines 27 and 28 of Page 1, then he's got information and belief. That's not the basis for an affidavit and frankly not really relevant.

MR. GILES: Excuse me, your Honor.

I'm not aware of the document that you are referring to.

THE COURT: Well, you --

MR. GILES: I haven't seen that honestly.

THE COURT: It was probably served on you electronically.

Is that correct?

MR. WHITE: It was served on him electronically, your Honor. I also called Mr. Giles' office at five last night and told him I had served it.

We made every effort we could to fax it to him last night and this morning, and his fax was down.

THE COURT: Okay.

MR. GILES: Your Honor, I wasn't told anything last night. I wasn't in the office at five o'clock.

THE COURT: It doesn't matter.

MR. GILES: I'm sorry.

THE COURT: It doesn't matter. He's got a building permit now.

Footnote 7 in the original affidavit, by the way, is clearly not within the debtor's personal knowledge. And I'm striking it.

I went back and looked at preparation that I had taken for the January 27th hearing, which, as far as I can tell, was not conducted because that case was dismissed immediately prior to that hearing;

Isn't that correct?

MR. GILES: That's correct, your Honor.

THE COURT: Does either party have any additional evidence they wish to offer either in support of the objection or in response to the objection?

Mr. Giles?

MR. GILES: Well, not having seen this latest document, did you just say you struck that document?

THE COURT: No. I struck footnote 7 of the original Greene declaration.

MR. GILES: I see.

The only proffer I would make is that the house he used to live in was 780 Browning.

And --

THE COURT: Where he lived with Karen --

MR. GILES: With Karen Smith.

THE COURT: Yeah.

MR. GILES: Right.

And that I would --

THE COURT: So what?

MR. GILES: -- I would call Karen Smith to the stand and she would testify that mail is now coming to that address addressed to Dr. Greene.

That's the only thing I would --

MR. WHITE: I won't object to that. If he wants to call her then he should call her.

THE COURT: Well listen, all that matters, homesteads and exemptions are determined upon the date of the filing of the petition. I don't think there's any question about that.

MR. WHITE: I think you're right.

MR. GILES: Your Honor, I'd like to address that in argument when I get a chance.

THE COURT: Okay.

MR. WHITE: Your Honor, in response to your question you didn't get to me on do we have --

THE COURT: Yes.

MR. WHITE: -- have anything else.

With regard to the stricken footnote, I'd simply note that attached as Exhibit A to -- or Exhibit C, I should say, to Mr. Giles' reply filed May 17 is the log of the county enforcement -- code enforcement people.

And the very second sentence in that log says:

"The complainant is a creditor for the property owner."

THE COURT: It does say that. I didn't strike that.

MR. WHITE: Okay.

THE COURT: What I struck was something that the declarant didn't have personal knowledge of.

MR. WHITE: Okay. Right.

THE COURT: I didn't say what was there was right or wrong, I just said that it wasn't proper in an affidavit.

All right. Do I need to set aside time to have an evidentiary hearing in this matter? That's my question.

It's set for ten minutes. I've already taken ten minutes. I've got a full calendar today.

MR. WHITE: Your Honor, I think you should. I think the crucial question is--you've just phrased it--was he living there on the date --

THE COURT: With the intent --

MR. WHITE: -- the petition was filed?

THE COURT: Remember intent is critical for the homestead.

MR. WHITE: Right.

THE COURT: When you take a look at what I wrote in Sullivan and you take a look at what the judge wrote in an earlier case--I think Zohner (pho) is the name of the case-- that intent becomes critical.

I'm going to give you my tentative conclusions and then I am going to set this for an evidentiary hearing.

One, I am far from convinced that the 1215-day limitation as imposed or enacted, I should say, by the Reform Act on its effective of April 20, 2005 has any relevance to this proceeding;

The statute says acquired. Acquired doesn't mean, so far as I can determine, the same as living in, declaring homestead;

If that's what Congress intended that's what Congress could have written;

And there's absolutely no authority cited for the position that the fact that you may have owned it for longer than 1215 days and not declared a homestead means that you're ineligible to declare a homestead on the date that you filed the petition;

So unless I see some authority for that proposition and some type of analysis of legislative history and application to the statute, I certainly can't get there;

Secondly, I do believe that homestead and exemptions are determined upon the date that the petition is filed;

But I think that also, as I noted, that the intent of the parties, at least the intent of the debtor is critical;

Now there is some of the authorities in here that I just did not understand. And perhaps I was confused.

We know that the debtor purchased this property in 2003?

MR. WHITE: '94, your Honor, he bought.

THE COURT: In '94?

That the declaration of homestead was recorded on August 11, 2004;

The Chapter 13 was filed on August 27, 2004;

That there had been an agreement to build a home

on the property but no permit was obtained until just recently;

That the debtor had a travel trailer, not a mobile home;

And he told the County that he would move;

But that may well have been post-petition, and I'm not sure that it makes any difference;

Now you need a dwelling or a mobile home;

It appears to me that you have conceded that that travel trailer is exactly that, a travel trailer, not a mobile home;

MR. WHITE: Yes, your Honor. We would --

THE COURT: Okay.

MR. WHITE: We would go further and say that even if it's a tent of cloth--because he lived it as a tent--as long as --

THE COURT: There's a tent next to the travel trailer.

MR. WHITE: Well --

THE COURT: Because he just used the travel trailer and the refrigerator or something in there.

MR. WHITE: Right.

We think --

THE COURT: And storage.

MR. WHITE: -- it doesn't matter what the

structure is, what it's made of, whether cloth, steel, wood. It's whether he lives there with the intent of claiming it.

THE COURT: But let's make sure we understand exactly what your admission is.

That the travel trailer is not a mobile home;

And it is your position that there's a dwelling on the property.

MR. WHITE: Yes, your Honor. That --

THE COURT: Because it's the word dwelling that's used under 115.005, I believe.

MR. WHITE: Right.

And that's what we claimed just to make sure that everyone knew we were claiming the home, the trailer as the home.

We amended our petition and put in 115. We did not claim under the section that says a mobile home is exempt even if the land is not owned. That was added later.

Our case would follow or arise on the law prior to that amendment allowing mobile homes to be exempted.

THE COURT: You're basing it simply on dwelling.

MR. WHITE: Yes, your Honor.

THE COURT: All right.

So that simplifies the procedure somewhat.

Because the statute is fairly clear.

All right.

I also believe that Jackman vs. Nance indicates that it isn't just the particular portion of the property on which the dwelling is located, but all of the property that's used in association with that;

So perhaps the entire sixty-seven acres. And that's what Jackman found.

MR. GILES: May I point something out, your Honor?

THE COURT: Yes.

MR. GILES: Jackman is the latest pronouncement from the Nevada Supreme Court on this issue. And the language in the holding of Jackman I think is critical. Because it says:

"Using a building partly for business purposes is not inconsistent with the claim of homestead protection, provided it is, and continues to be, the bona fide residence of the family."

THE COURT: That's right. On the date of the filing of the petition.

Read Matley, read what the Supreme Court said. And if you disagree with it, then brief it.

Take a look at what I wrote in Sullivan. Because that was exactly the issue I had in the Sullivan case. I've done the research.

And if you think it's incorrect then I need to know the basis for that.

We now know we're proceeding upon NRS 115.005. Which -- 2(a):

"Homestead means the property consisting of a quantity of land together with a dwelling house thereon and its appurtenances."

Correct?

MR. WHITE: Yes, your Honor.

THE COURT: All right.

It is not based upon (b) which is a mobile home, whether or not the underlying land is owned by the claimant.

All right. Then there's a argu -- so we don't have to worry about definition of mobile home. We don't have to worry about any of that. What we're looking at is dwelling.

Correct?

MR. WHITE: Correct, your Honor.

THE COURT: Because I think you're right. I think you're moot.

I'm well aware of the holding in Jackman.

Regarding legislative interpretation, I think there is an excellent exposition on that subject in Judge Markell's opinion regarding 522(b). I think it's Bariel

(pho).

But that case, he did that about six months ago. And you can put your hands on that case.

(Pause in proceedings)

THE COURT: So I need to have evidence regarding debtor's intent, the situation on the date of the filing, and I think additional briefing on the points that I've just raised and now that we've at least narrowed the issues.

And if you can -- and if you want to brief on BAP CPA feel free.

I do not believe that the 125,000-dollar cap imposed by that is applicable. But I'll give you a chance to, if you can find some authority, to cite it to me.

How much time will you need for the evidentiary hearing and argue the matter? two hours? one hour?

MR. GILES: Your Honor, I think probably two hours might make sense.

I'm going to want to take Mr. Greene's -- Dr. Greene's deposition between now and then. And --

THE COURT: Okay.

MR. GILES: -- I think we should probably schedule an hour.

THE COURT: I think that's realistic, Mr. White, --

MR. GILES: A couple of months.

THE COURT: -- don't you?

MR. WHITE: I think so, your Honor.

THE COURT: All right.

(Discussion off the record between the Court and the courtroom deputy)

THE COURT: Two o'clock, Monday, July 31st. And you have a whole afternoon.

I want simultaneous briefing;

And any additional briefs have to be filed by Friday, July 21st, so I have a chance to look at them;

Any further declarations have to be filed by that date and time;

I don't think I'll need any replies. By that, I mean I have four sets of briefs right now;

I'd like you to limit those briefs to ten pages since I have the others;

We've narrowed the issues, identified the issues that I'm concerned about;

If you think my focus is incorrect tell me why;

And then I look forward to seeing you folks on the 31st.

MR. GILES: Your Honor, just one clarification.

You referred to Matley. You're talking about the Nevada Supreme Court case of Matley?

THE COURT: I believe it's a United States Supreme Court case.

MR. GILES: A U.S. case?

THE COURT: Yeah. Take a look at Sullivan. It's cited in there.

MR. GILES: And Sullivan is an opinion you wrote in this court. Thank you.

MR. WHITE: Which I've cited, your Honor.

THE COURT: Yeah. And it went up and was affirmed.

MR. WHITE: Thank you, your Honor.

THE COURT: All right. Thank you.

That had to deal with abandonment of a homestead.

MR. GILES: Thank you, your Honor.

THE COURT: Thank you.

(Proceedings concluded at 9:54:35)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital sound recording of the proceedings in the above-entitled matter.

s/ Marjorie G. Davall June 1, 2006