**Entered on Docket**
**July 27, 2006**

_____
**Hon. Gregg W. Zive**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:                                                        Case No. BK-N-05-54727-GWZ

SCOTT K. GREENE,                               Chapter 7

          Debtor.                                       **MEMORANDUM DECISION ON DEBTOR'S CLAIM OF EXEMPTION**

_____ /

      This matter came before the court May 24, 2006 upon creditor Rena Wells' Objection to the Debtor's Claim of Exemption. The parties were advised to file post-hearing briefs and the matter was continued to July 31, 2006. Having considered the record before the court, arguments of counsel and for the reasons set forth below, the court partially sustains and partially overrules the Creditor's objection.

## PROCEDURAL HISTORY

A.    <u>The First Bankruptcy Case: Chapter 13  (BK 04-52579)</u>

      The Debtor, Dr. Scott Greene, purchased a 67-acre parcel of undeveloped land located at 450 Alamosa Drive, Sparks, Nevada (the "Property") in May 1994. Debtor moved a travel trailer onto the Property on August 10, 2004. On August 11, 2004, Debtor recorded a declaration of a homestead with the Washoe County Recorder's Office for a travel trailer and the Property. Just 16 days later, on August 27, 2004, Debtor filed a Chapter 13 petition. Debtor admits he never lived on the property prior to filing the Chapter 13 petition. Debtor admits that until early August 2004, he lived

1 in a single family residence at another location with his former girlfriend.

2 On October 8, 2004, Rena Wells ("Wells") filed an Objection to Claim of
3 Exemption, asserting that Debtor's homestead was not his bona fide residence and that
4 the travel trailer did not qualify as "a dwelling house" under Nevada homestead law.
5 Alternatively, she argued that even if the exemption applied, the doctrine of judicial
6 estoppel should be invoked. Debtor voluntarily dismissed the Chapter 13 case on
7 February 17, 2005.

8 On August 11, 2005, Debtor was cited by Washoe County (the "County") for
9 illegally using a recreational vehicle for dwelling purposes. Debtor told authorities that
10 he was no longer using the trailer as a dwelling as he was sleeping in a tent and only
11 used the trailer to shower, store clothes, and keep food in the refrigerator. The County
12 concluded that Debtor was no longer living on the property. Debtor claimed the tent
13 qualified as a "dwelling house."

14 B.     The Second Bankruptcy Case: Chapter 7 (BK 05-54727)

15 Debtor filed his Chapter 7 petition October 15, 2005. Debtor was cited again,
16 this time for illegal storage of unregistered vehicles on the Property, on November 23,
17 2005. At the trial in Sparks Municipal Court on May 2, 2006, Debtor asked for a
18 continuance of the hearing, stating that he would vacate the premises. Based on
19 Debtor's representation, the County continued the matter until August 6, 2006. Debtor
20 again claimed the Property as his homestead exemption.

21 Wells timely filed an Objection to Claim of Exemption April 12, 2006. In
22 addition to challenging the validity of Debtor's homestead, Wells argues that even if
23 valid, the exempted amount must be reduced from $350,000 to $125,000 pursuant to
24 11 U.S.C. § 522(p)(1) because the homestead was an interest acquired within 1,215
25 days of the petition.

26 **ISSUES**

27 The issues are: (1) Whether Debtor had a valid homestead under Nevada law
28 when he filed his Chapter 7 bankruptcy petition; (2) Whether the homestead exemption

- 2 -

1  claim, if valid under Nevada law, should be reduced by 11 U.S.C. § 522(p)(1); and (3)
2  Whether the doctrine of judicial estoppel applies to bar Debtor from the benefit of the
3  homestead exemption. The court now answers affirmatively to the first two questions
4  and negatively to the third.

**ANALYSIS**

A.   Nevada Homestead Law

The purpose of the homestead exemption is to preserve the family home and to strengthen family security and stability for the benefit of the family. The homestead exemption must be construed liberally in favor of the persons for whose benefit it was enacted. Jackman v. Nance, 857 P.2d 7, 8 (Nev. 1993).

The validity of any homestead exemption must be evaluated as of the date of the filing of the petition. In re Sullivan, 200 B.R. 682, 684 (Bankr. D. Nev. 1996)(citing Myers v. Matley, 318 U.S. 622, 628 (1943)). The court is compelled to evaluate the facts as of October 15, 2005, the Petition date, to determine if they support the Debtor's homestead exemption claim.

Typically a debtor is precluded from claiming a homestead exemption unless as of the petition date the debtor had perfected his rights under the state exemption statute. Where the property is not exempt under state law, it passes to the trustee for the benefit of the creditors. White v. Stump, 266 U.S. 310 (1924).

In Nevada, a homestead is defined as the property consisting of either a quantity of land, together with the dwelling house thereon and its appurtenances, to be selected by the husband and wife, or either of them, or a single person claiming the homestead. NRS 115.005(2). The homestead exemption extends to the claimant's equity in the homesteaded property up to a maximum of $350,000. NRS 115.010.

To secure the benefits of Nevada's homestead protection, a debtor must record a declaration of homestead. Id. Once properly recorded, the exemption of "a quantity of land, together with a dwelling house" is limited only by the actual residence of the debtor on the premises with the intent to use and claim the property as a homestead.

- 3 -

1  In re Trigonis, 224 B.R. 152 (Bankr. D. Nev. 1998). It is axiomatic there cannot be a
2  homestead absent residence. In re Sullivan, 200 B.R. 682, 685 (Bankr. D. Nev. 1996).
3  A homestead cannot be carved out of a track of naked land. In re Gallagher, 66 P. 70,
4  71 (Ca. 1901). Only where the parties actually live on a piece of land and make it their
5  bona fide home, will the phrase "dwelling house," as used in the homestead law, be
6  given a liberal construction. Id.

7        Here, on August 11, 2004, Debtor recorded a declaration of homestead for the
8  67 acres of land and a travel trailer. Wells argues the homestead was invalid because
9  Debtor did not live on the property when Debtor's first bankruptcy case was filed on
10 August 27, 2004. However, that date is irrelevant because regardless of how tenuous
11 Debtor's homestead was on the date of the filing of Debtor's first bankruptcy case,
12 there exists substantial evidence to support Debtor's actual and continuing residency
13 on the property and his intention to remain there as of the date of the current
14 bankruptcy filing.

15       First, Debtor has produced three affidavits to support his continuing residency
16 on the property from August 11, 2004 to the present. Ironically, Debtor's residency
17 was further corroborated by Washoe County when the county cited him for using a
18 recreational vehicle for dwelling purposes in violation of the building code a year later
19 on August 11, 2005. Finally, since recording the homestead, Debtor has made
20 significant improvements to the trailer and initiated a plan to improve the property,
21 including entering into an agreement to construct a home on the property.

22       Pursuant to Fed. R. Bankr. P. 4003(c), the objecting party has the burden of
23 proving the exemptions are not properly claimed. In re Hyman, 123 B.R. 342 (9th Cir.
24 B.A.P. 1991). In this case, Wells has attempted to rebut the prima facie effect of the
25 claimed exemption by asserting that Debtor did not reside at the property when he filed
26 his first bankruptcy petition. Even if the assertion was sufficient to shift the burden of
27 production to Debtor, Debtor has satisfied the burden by the evidence demonstrating
28 his physical occupancy and intent regarding the claimed homestead. Wells has not

1  proven that when Debtor filed the Chapter 7 bankruptcy petition he did not reside at
2  the property with the intent to declare and use the property as his homestead.

3  Wells further argues the homestead is invalid because Debtor's travel trailer
4  does not fit within the meaning of "dwelling house" pursuant to NRS 115.005. Wells'
5  emphasis on the importance of the term "dwelling house" is misplaced. It appears that
6  the use of the term "dwelling house" in the homestead statute was merely for the
7  purpose of fixing the locus and extent of the exempt property. Smith v. Stewart, 13
8  Nev. 65 (1878).

9  It is well established in Nevada that if a debtor has an interest in real property
10 and actually occupies it as a residence, the mode of occupation and other uses of the
11 property are immaterial. Jackman v. Nance, 857 P.2d 7 (Nev. 1993). Other
12 jurisdictions have grappled with similarly unorthodox choices of abode and held them
13 to be valid homesteads as long as the elements of the actual residence were
14 demonstrated.[1]

15 Wells also contends that Debtors' use of the travel trailer was in violation of the
16 County building code and thus the homestead claim is invalid. However, she fails to
17 cite any legal authority in support of her argument.

18 In a factually similar case, this court overruled an objection by a creditor to a
19 homestead exemption for a fifth-wheel trailer and real property. In re Reilly, Case No.
20 05-54681, Dkt. No. 28 (entered May 10, 2006). In Reilly, the debtor had lived
21 continuously for eight months in a trailer parked on the property without procuring a
22 building permit prior to filing Chapter 7 petition.

---

[1] In re Pitch, 253 B.R. 562 (Bankr. D. Id. 2000)(a 9,774 square feet commercial building); Kiesel v. Clemens, 56 P. 84 (Id. 1899)(a hotel which the debtor used as a residence as well as operated as a business); In re Vizentinis, 175 B.R. 824, 826 (Bankr. E.D.N.Y. 1994)(an apartment building), Opryland Music v. Robinson, 75 B.R. 985 (Bankr. W.D. Mo. 1987)(debtor living in the back of bar could claim homestead).

1   Similarly, here, although he did not have a proper permit for sometime, Debtor has lived on the Property for almost 14 months prior to filing his Chapter 7 bankruptcy petition and continues to do so. All that is required under Nevada law to claim a homestead exemption is for the claimant to identify a quantity of land upon which there is a dwelling house, declare an intent to use and claim the property as a homestead and demonstrate residence at the time the bankruptcy petition is filed. The court finds Dr. Greene satisfied each of these requirements at the time he filed the Chapter 7 bankruptcy case because he has occupied the Property as his principal residence continuously since August 2004 with intent to use and claim the Property as his homestead.

B.      Applicability of 11 U.S.C. § 522(p)(1)

Wells also seeks to limit the Debtor's homestead exemption to $125,000, because even if Debtor's homestead is valid under Nevada law, the homestead exemption is an *interest acquired* within 1,215 days of the bankruptcy petition. Debtor argues that Section 522(p) does not apply to him because he purchased the property more than 1,215 days pre-petition. The court agrees with Wells' argument that Section 522(p) limits the exemption to $125,000.

Before examining the substantive issue regarding Section 522(p), the court notes the applicability of the statute to this case. 11 U.S.C. § 522(p) is a part of The Bankruptcy Abuse and Consumer Protection Act of 2005, enacted on April 20, 2005. Although virtually all of its provisions became effective on October 17, 2005, Section 522(p) became effective on the date of enactment. Because this case was filed October 15, 2005, Section 522(p) is applicable.

A strict reading of the statute may lead one to conclude that 11 U.S.C. § 522(p)(1) applies only to debtors in non opt-out states that choose to take their state's exemptions rather than take the federal exemption. In re McNabb, 326 B.R. 785 (Bankr. D.Ariz. 2005). The section provides:

> Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of *electing* under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of **interest** that was *acquired* by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $ 125,000 in value in--

11 U.S.C. § 522(p)(1) (emphasis added).

Although Nevada has "opted-out" of the federal exemption scheme, a debtor who files for bankruptcy protection in Nevada "elects" simply by claiming an exemption rather than "electing" not to claim a homestead. Therefore, the cap applies to all Nevada debtors who do not satisfy the 1,215 day rule. In re Kane, 336 B.R. 477 (Bankr. D.Nev. 2006); In re Virissimo, 332 B.R. 201 (Bankr. D.Nev. 2005).

Section 522(p) imposes a monetary limit of $125,000 on the amount of the debtor's interest in a homestead property if it was acquired within 1,215 days before the commencement of the case. Collier on Bankruptcy § 522.13 (15th ed. 2006). This suggests that the phrase 'interest that was acquired" should be construed as applying to homestead property interests that the debtor gained through his or her actions or efforts in contemplation of filing bankruptcy. Id.

The court rejects Debtor's interpretation of the statute that the $125,000 exemption should apply only to the property purchased within 1,215 days of bankruptcy petition. Debtor supports his position by selectively relying on a Florida case where the court correctly ruled that if the property is acquired within 1,215 days of the debtor's petition date, the homestead exemption is limited to $125,000. In re Wagstaff, 2006 WL 1075382 (Bankr. D. Fla. 2006).

In Wagstaff, the debtor had purchased and homesteaded a property shortly before he filed his petition and the court simply applied Section 522(p) to include the purchased property. Id. Contrary to Debtor's reading of the case, the Florida court nowhere states that Section 522(p) applies only to the properties purchased within 1,215 days of filing a bankruptcy petition. The crux of that case was not about the

definition of "interest" but whether or not a Florida debtor "elects" for the purpose of Section 522(p).

Debtor narrowly applies legislative history interpreting the statute. It is true, as Debtor contends, that Congress enacted Section 522(p) largely to close so-called "mansion loopholes" that could enable wealthy debtors to evade creditors by filing bankruptcy after converting nonexempt assets into an expensive exempted homestead in one of the handful of states that have unlimited homestead exemptions. In re Kane, 336 B.R. 477, 482 (Bankr. D.Nev. 2006). However, Debtor's undue reliance on legislative history rewrites the plain language of the statute and hamstrings the statute's secondary effect, particularly when the plain meaning of the language does not lead to absurd results, i.e., when the anticipated outcome of the strict reading is rational and plausible.

For example, the literal and plain reading of "interest acquired" correctly mitigates the harm to the creditors when the debtor makes an eleventh hour conversion of a commercial rental property into a legitimate homestead. If Congress wanted to limit the effect of Section 522(p) only to the real property purchased within 1,215 days, they could have drafted the law accordingly. The U. S. Supreme Court stated, "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." In re Kane, 336 B.R. 477, 486 (Bankr. D. Nev. 2006)(citing Union Bank v. Wolas, 502 U.S. 151, 158 (1991)).

The language of the statute is clear and unambiguous. 11 U.S.C. § 522(p)(1) states that "a debtor may not exempt any amount of *interest* that was *acquired*". Interpreting this to mean that the statute limits the exemption only to the property purchased within 1,215 days preceding a bankruptcy petition violates a fundamental canon of statutory construction, i.e., when the same language is used in various parts of an Act, the language is presumed to have the same meaning throughout. Sorenson

- 8 -

v. Secretary of Treasury, 475 U.S. 851, 860 (1986).

In defining the *property* of the estate, Congress wrote that filing a bankruptcy petition creates an estate, which consist of all legal and equitable *interests* the debtor possesses at the commencement of the case. 11 U.S.C. § 541(a); In re Kane, 366 B.R. 477, 482 (Bankr. D.Nev. 2006). Congress clearly distinguished 'property' from 'interest' and made the latter a component of the former. For example, the debtor's interest in property includes "title" to the property, which is an interest, just as is a possessory interest, leasehold interest or future remainder interest. S. Rep. No. 95-989 (1977).

The homestead exemption is a property interest. In re Brent, 68 B.R. 893, 895 (Bankr. D.Vt. 1987). The homestead exemption interest is not to be equated with the underlying property. In re Charles, 25 B.R. 331 (9th Cir. B.A.P. 1982). The homestead interest was understood by the Nevada Supreme Court to be entirely distinct from the real property which it affected and in many ways deemed a legal "right" apart from that of simple ownership. Roberts v. Greer, 40 P. 6,7 (Nev. 1895).

The homestead interest is inchoate. It lies dormant and inactive until it is *acquired* by the debtor. I.H. Kent Co. v. Busscher, 277 F.2d 901 (9th Cir. 1960). Nevada has never by direct statute or judicial construction provided for recognition of a de facto homestead other than out of the community property of spouses. Mullikin v. Jones, 278 P.2d 876 (Nev. 1955). Therefore, in Nevada when a person purchases real property, the protection of the homestead interest does not automatically accrue. The property becomes a homestead only when the purchaser starts to reside on the property with full intention of using that property as his primary residence. Up to that time, the property remains subject to execution and attachment as any other property. What must be acquired during the 1,215 day period is the homestead exemption, not

1  the real property. These are separate interests.[2]

2  Here, although Debtor purchased the Property in 1994, Debtor did not have a
3  homestead interest in the Property until he started to live on to the Property in August
4  2004, well within 1,215 days of filing the current bankruptcy petition. Up to that point,
5  the property remained naked land, exposed to execution and attachment. Whatever
6  Debtor had in his bundle of rights and interests pertaining to the Property, homestead
7  protection was not one of them. Therefore, the court concludes that Debtor's
8  homestead interest is a property interest acquired within 1,215 days of his bankruptcy
9  petition and is limited to $125,000 pursuant to Section 522(p).

10 C.    The Doctrine of Judicial Estoppel

11
12  Finally, Wells asserts that Debtor is judicially estopped from claiming any
13  homestead exemption because of his statements to the contrary in the earlier case and
14  because of his interactions with the courts and Washoe County officials.

15  Judicial estoppel is an equitable doctrine that preserves the integrity of the courts
16  by preventing parties from abusing the judicial process by achieving success on one
17  position and then arguing the opposite to suit an exigency of the moment. <u>Laisure-
18  Radke v. Barr Labs., Inc.</u>, 2006 U.S. Dist. LEXIS 42046 (W.D. Wash. 2006).

19  No exact formula exists for determining the proper circumstances to apply
20  judicial estoppel but a court can apply the doctrine at its discretion. <u>Russell v. Roffs</u>,
21  893 F.2d 1033, 1037 (9th Cir. 1990). A general principle is that in order to invoke
22  judicial estoppel, a party must show that the opponent took a contrary position under
23  oath in a prior proceeding and that the court accepted the prior position. <u>Hamilton v.
24  State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 783 (9th Cir. 2001). Additionally, courts

25  _____

26  [2] Judge Bruce A. Markell, a colleague of this court, has noted that a
    homestead exemption interest is a property interest referenced in Section 522(p).
27  Memorandum on Objection to Exemption, <u>In re Rahman</u>, Case No. 05-21245, Dkt
28  No. 320 (entered Mar. 2, 2006). This court concurs with <u>Rahman</u>.

have held that prior statements made in contexts other than judicial proceedings, such as administrative proceedings are sufficient to trigger application of the doctrine of judicial estoppel in later cases. Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 604 (9th Cir. 1996); In re Pich, 253 B.R. 562, 569 (Bankr. D. Id. 2000).

In Pich, the court applied judicial estoppel and denied the debtor a homestead exemption when the debtor misled the zoning authority by disavowing residency in an application for rezoning approval. Id. at 568. By executing the application, the debtor verified that all of his information and statements are true to the best of his knowledge. Id.

Wells cites two instances wherein she asserts that Debtor's statement or conduct supports the application of judicial estoppel. The first was Debtor's denial of his residential use of the trailer on August 11, 2005 when a Washoe County official asked him about if he resided in the trailer at the Property. Debtor told the official that he used the trailer mainly for storage and actually slept in a tent. The court is not convinced that this dialogue is sufficient to trigger the doctrine of judicial estoppel because the County official's "investigative inquiry" in such an informal setting does not rise to the level of an administrative proceeding. This is not an unsworn declaration under penalty of perjury. *See,* NRS 53.045.

The second instance was Debtor's statement to the City of Sparks Municipal Court on May 2, 2006 that he intended to vacate the property. Debtor made this statement when asking the court for a continuance. Again, Debtor's statement to the municipal court was apparently not made under oath. Admittedly, Debtor may have misled the court to gain temporary reprieve from prosecution for illegally storing unregistered vehicles on the property. There is no evidence to indicate that the court accepted Debtor's claim. The court simply granted the continuance of the matter and did not dismiss the case. The case is still pending and Debtor's plans to vacate the property do not change the circumstances of his violation at the time he was cited.

Moreover, Debtor's intention to vacate the property is not necessarily inconsistent with his homestead claim. As noted above, the homestead exemption must be determined as of the petition. What occurs later is not germane. A debtor is not bound to reside forever in his homestead once the case is closed. He is free to assign his interest, to liquidate it, or convert it into a commercial property. <u>Culver v. Chiu</u>, 266 B.R. 743 (Bankr. Fed. App. 2001).

The applicability of the doctrine of judicial estoppel is within the court's discretion and should not be used to work an injustice, such as where the party's former position was the product of inadvertence or mistake, or where there is only the appearance of inconsistency between two positions but both may be reconciled. <u>Fredenburg v. Contra Costa County Dept. of Health Servs.</u>, 172 F.3d 1176, 1179 (9th Cir. 1999). The law does not presume wrongful and odious acts. The court concludes that the doctrine of judicial estoppel does not apply here.

## CONCLUSION

For the above reasons set forth, the court denies the Objection to Debtor's Claim of Homestead Exemption and finds the Debtor's claim of homestead exemption claim to be valid under Nevada homestead law but is limited to $125,000 pursuant to 11 U.S.C. § 522(p).