William D. Cope, Esq., Nevada Bar #1711    E-filed October 25th, 2006
COPE & GUERRA
595 Humboldt Street
Reno, NV 89509-1603
(702) 333-0838
(702) 333-6694 (fax)
cope_guerra@yahoo.com
Attorney for Anabelle Savage, Trustee

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

IN RE:

SCOTT K. GREENE

    Debtor.

CASE NO.   BK-N-05-54327-GWZ
CHAPTER   7

**DECLARATION OF ANABELLE SAVAGE IN SUPPORT OF MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES; PAYMENT OF SALES COMMISSION**

Hearing Date: November 21, 2006
Hearing Time: 10:00 a.m.

---

Anabelle Savage, under penalty of perjury of the laws of the United States, declares:

1. This case was filed on October 15, 2005 and the I was appointed to administer the estate.

2. Debtor, Scott Greene ("Debtor"), listed real property located at 450 Alimosa Dr., Sparks, NV on Schedule A filed with this bankruptcy petition with a value of $240,000.00. (the "Property"). The Property consists of approximately 67.11 acres of bare land located in Spanish Springs Nevada. The Property is encumbered by a deed of trust securing a promissory note in an amount in excess of $77,000.00 in favor of Sun West Bank ("Bank").

3. Although the Property was initially scheduled by the Debtor as exempt up to its entire value, creditor, Rena Wells ("Wells"), objected to such exemption. After hearing of the Wells objection, the court entered an order on July 27, 2006 ("Exemption Order") limiting the amount of the Debtor's exemption to $125,000.00. The Debtor thereafter filed a motion to stay the Exemption Order and filed an appeal of the same. The court denied

1 the Debtor's motion for stay by order entered on September 28, 2006 ("Stay Order").

2 Docket #86. The Stay Order also permitted the me to sell the Property for the estate.

3     4. On August 24, 2006 the court entered an order approving the Trustee's

4 application to employ Darlene Stanoff (" Stanoff") of Dickson Realty ("Dickson") to sell

5 the Property. Docket #64.

6     5. Stanoffs' efforts resulted in my receipt and acceptance of an offer to purchase

7 the Property for $370,000.00. The offerors are David and Lois McClenahan

8 ("McClenahans"). A true and correct copy of the Offer and Acceptance Agreement,

9 Vacant Land ("Offer") is attached hereto as Exhibit "A" and incorporated herein by

10 reference.

11     6. The Offer contemplates the close of escrow to be no later than November 30,

12 2006.

13     7. The Offer anticipates a commission of 6% of the sale price. In this case the

14 McClenahans are also represented by Harvey Fenell of Dickson. It is not known whether

15 the commission is to be spit equally between the agents. In any case, if the sale closes, a

16 6% commission on $370,000.00 would be $22,200.00.

17     8. To the best of my knowledge the McClenehans, as purposed purchasers, have no

18 connection to the Debtor or to me as Trustee and are good faith purchasers for value.

19     9. Based upon information provided to me by Stranoff, I believe that a sale price

20 of $370,000.00 reflects the fair market value of the Property and that a sale at such price

21 is in the best interest of the estate.

22     Dated this 13 day of October, 2006.

_____
Anabelle Savage, Trustee

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509

# EXHIBIT A

# DUTIES OWED BY A NEVADA REAL ESTATE LICENSEE
*This form does not constitute a contract for services nor an agreement to pay compensation.*

In Nevada, a real estate licensee is required to provide a form setting forth the duties owed by the licensee to:
   a) Each party for whom the licensee is acting as an agent in the real estate transaction, and
   b) Each unrepresented party to the real estate transaction, if any.

| |
|---|
| Licensee: The licensee in the real estate transaction is __**Clay Alder and Darlene Stanoff**__ whose license number is __07074/26507__. The licensee is acting for [client's name(s)] **Annabelle Savage BK Trustee Ch 7 for Scott K. Greene** _____ who is/are the ☒ Seller/Landlord; ☐ Buyer/Tenant. |
| Broker: The broker is _____**Harvey Fennell**_____, whose company is _____**Dickson Realty**_____. |

### Licensee's Duties Owed to All Parties:
A Nevada real estate licensee shall:
1. Not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest.
2. Exercise reasonable skill and care with respect to all parties to the real estate transaction.
3. Disclose to each party to the real estate transaction as soon as practicable:
   a. Any material and relevant facts, data or information which licensee knows, or with reasonable care and diligence the licensee should know, about the property.
   b. Each source from which licensee will receive compensation.
4. Abide by all other duties, responsibilities and obligations required of the licensee in law or regulations.

### Licensee's Duties Owed to the Client:
A Nevada real estate licensee shall:
1. Exercise reasonable skill and care to carry out the terms of the brokerage agreement and the licensee's duties in the brokerage agreement.
2. Not disclose, except to the licensee's broker, confidential information relating to a client for 1 year after the revocation or termination of the brokerage agreement, unless licensee is required to do so by court order or the client gives written permission.
3. Promote the interest of the client by:
   a. Seeking a sale, lease or property at the price and terms stated in the brokerage agreement or at a price acceptable to the client.
   b. Presenting all offers made to, or by the client as soon as practicable.
   c. Disclosing to the client material facts of which the licensee has knowledge concerning the real estate transaction.
   d. Advising the client to obtain advice from an expert relating to matters which are beyond the expertise of the licensee.
   e. Accounting to the client for all money and property the licensee receives in which the client may have an interest.

**Duties Owed By a broker who assigns different licensees affiliated with the brokerage to separate parties.**
Each licensee shall not disclose, except to the real estate broker, confidential information relating to client.

**Licensee Acting for Both Parties:** You understand that the licensee _____ may *or* _____ may not, in the future act
    *(Client Init)*    *(Client Init)*
for two or more parties who have interests adverse to each other. In acting for these parties, the licensee has a conflict of interest. Before a licensee may act for two or more parties, the licensee must give you a "Consent to Act" form to sign.

| I/We acknowledge receipt of a copy of this list of licensee duties, and have read and understand this disclosure. | |
|---|---|
| _____ 10/4/06 3:30 PM<br>Seller/Landlord         Date        Time<br>**Annabelle Savage BK Trustee Ch 7 for Scott K. Greene** | DH M<sup>c</sup> Clenahan 10-4-06 3:00 PM<br>Buyer/Tenant         Date        Time |
| _____ _____ _____<br>Seller/Landlord         Date        Time | R.C. McClenahan 10-4-06 3:00 PM<br>Buyer/Tenant         Date        Time |

Approved Nevada Real Estate Division          Page 1 of 1                                    525
Replaces all previous versions                                                           Revised 10/01/05

OFFER AND ACCEPTANCE AGREEMENT
VACANT LAND




1  RECEIVED FROM _____ David H. McClenahan, Lois C. McClenahan _____ ,
2  hereinafter designated as BUYER, the amount set forth below as EARNEST MONEY DEPOSIT (LINE 10) on account
3  of the PURCHASE PRICE OF $ 370,000.00 _____ DOLLARS,
4  for the real property situated in the ☐ City of _____ , ☐ Unincorporated Area known as _____ ,
5  County of ___ Washoe ___ , State of Nevada, described as _____ 450 Alamosa Drive _____ ;
6  consisting of approximately ___ 67.11 ___ ☒ acres _____ ☐ square feet.
7  APN No. 076-290-08 _____ (Legal Description to be supplied in escrow).
8
9                                    CASH AND DEPOSITS
10 EARNEST MONEY DEPOSIT Evidenced by ☒ Check, or ☐ Other                                    $ 1,000.00 _____
11 payable to (Specify): Ticor Title _____  held uncashed until acceptance and then
12 deposited within two (2) business days with: Ticor Title _____
13 Authorized Escrow Holder to be selected by ☐ Buyer ☒ Seller.
14 DISPOSITION OF EARNEST MONEY IN THE EVENT OF DEFAULT
15 In the event Buyer shall default in the performance of this agreement, Seller may, subject to any rights of a broker herein,
16 retain such portion of the deposit to cover actual damages sustained or take such actions as he deems appropriate to
17 collect such additional damages as may have been actually sustained. Buyer shall have the right to take such action as he
18 deems appropriate to recover such portion of the deposit as may be allowed by law.
19 BALANCE OF CASH DOWN PAYMENT (not including closing costs)                                 $ 369,000.00 _____
20
21
22
23                                       FINANCING TERMS
24 NEW FIRST LOAN PROCEEDS:                                                                   $ _____
25 ☐ PRIVATE, ☐ CONVENTIONAL, ☐ SELLER Financing: FOR _____ years, interest not to exceed
26 _____ %, payable at approximately $ _____ per/mo. including ☐ principal and interest, ☐ interest
27 only, ☐ plus taxes and insurance.
28 Seller to pay discount points not to exceed _____ %. Buyer to pay discount points not to exceed _____ %.
29 Any reduction in discount points at closing to be allocated proportionately. Loan origination fee not to
30 exceed _____ % paid by ☐ Buyer, ☐ Seller. Loan contains a due on sale clause ☐ yes ☐ no.
31 All remaining loan fees shall be paid in customary manner and/or as required by law, ordinance and/or regulation.
32 Appraisal fee to be paid by ☐ Buyer, ☐ Seller.
33
34 SUBORDINATION CLAUSE
35 Seller ☐ shall ☐ shall not subordinate to a ☐ construction loan ☐ other loan not to exceed
36 $ _____ at _____ % interest per annum with a monthly payment of
37 approximately $ _____ including ☐ principal and interest ☐ interest only for
38 _____ months/years, said loan ☐ shall ☐ shall not be on voucher control.
39
40 EXISTING FIRST LOAN in the sum of approximately:                                           $ _____
41 ASSUMPTION OF: ☐ CONVENTIONAL, ☐ PRIVATE, ☐ OTHER: with interest currently
42 at _____ %, payable at $ _____ per month/year, including ☐ taxes and insurance, ☐ interest only.
43 Held by: _____
44 Assumption Fee, if any, not to exceed $ _____ . All charges related to assumption shall be
45 paid by Buyer. Any net differences between the approximate balances of encumbrances shown above, which
46 are to be assumed or taken subject to, and the actual balances at close of escrow shall be adjusted in ☐ Cash,
47 ☒ Other: See below: Other Financing Terms & Conditions
48
49 OTHER FINANCING TERMS AND CONDITIONS: _____
50 Conditioned upon Buyers ability to Re-Finance their existing residence for approximate amount
51 of $500,000.00.
52 _____
53 _____
54 _____
55 _____
56 _____
57 _____
58
59     TOTAL PURCHASE PRICE in the sum of:                                                    $ 370,000.00 _____
60 (not including closing costs)
61
62 CLOSING. ☒ On or before ___ November 30, 2006 ___ , OR ☐ within ___ 30 ___ days of accep-
63 tance, both parties shall deposit with the authorized Escrow Holder, all funds and instruments necessary to
64 complete the sale in accordance with the terms herein.

Property Address 450 Alamosa Drive Sparks, NV 89436  APN 076-290-08                          © RSAR 01/03
Page 1 of 6        Buyer [initials] [initials] and Seller [initials] [___] have read this page                          LAND1/6

Dickson Realty South Branch 500 Damonte Ranch Pkwy, #625 Reno, NV 89521
Phone: (775) 850-7000 0    Fax: (775) 850-7010    Darlene Stanoff                            David H. & Loi
          Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

## ADDITIONAL CONTRACT TERMS

1  **DEFINITIONS.** BROKER includes cooperating Brokers and all licensees. DAYS means calendar days unless other-
2  wise specified. DATE OF ACCEPTANCE means the date the Seller accepts the offer or the Buyer accepts the counter
3  offer. DELIVERED means personally delivered to principals or respective licensees, transmitted by facsimile machine or
4  mailed by certified mail. In the event of mailing, delivery shall be deemed to have been made on the day following the date
5  of mailing, evidenced by the postmark on the envelope containing the delivered material. In the event of fax transmission,
6  delivery shall be deemed to be complete at the time noted on the sender's fax confirmation sheet. The MASCULINE
7  includes the feminine and the SINGULAR includes the plural.

9  **CONDITIONS SATISFIED/WAIVED IN WRITING.** Each condition or contingency, approval and disapproval
10 herein shall be satisfied according to its terms or waived in writing by the benefiting party within the time limits specified
11 (or any extension thereof agreed to by the parties in writing), or this agreement shall terminate and all deposits be returned
12 to Buyer less expenses incurred by Buyer to the date of cancellation of this transaction. This paragraph contemplates that
13 each party shall diligently pursue the completion of this transaction.

15 **LOAN APPROVAL.** Within five (5) days of acceptance, Buyer agrees to submit a loan application, including all
16 documentation, to his lender and furnish within five (5) days of application a preapproval letter to Seller based upon a
17 standard factual credit report, verification of income and verification of available funds. This offer is conditioned upon
18 Buyer's ability to obtain approval/commitment for new financing as herein specified for subject property from lender of
19 Buyer's choice, and/or consent to assumption of existing financing provided for in this agreement, within_____ days
20 of acceptance. Buyer shall use his best efforts to qualify for and obtain said financing. In the event a loan approval/
21 commitment or consent is obtained, but not honored without fault of Buyer, then Buyer may terminate this agreement and
22 have all deposits returned less expenses incurred to the date of cancellation of this transaction.

24 **BONDS AND ASSESSMENTS OR IMPACT FEES.** In the event there is a Bond or Assessment which has an outstanding
25 principal balance and is a lien upon this property, such shall be ☐ paid by Seller, or ☐ assumed by Buyer. Existing
26 impact fees shall be ☒ paid by Seller, or ☐ assumed by Buyer.

28 **OMISSIONS FROM ESCROW INSTRUCTIONS.** The omission from escrow instructions of any provision herein
29 shall not preclude the right of any party from the enforcement of that provision. All representations or warranties shall
30 survive the conveyance of the property.

32 **EXISTING LOANS.** Seller shall, **within ten (10) days of acceptance**, provide Buyer with Notes and Deeds of Trust
33 to be assumed or taken subject to, and **within five (5) days of receipt** thereof, Buyer shall in writing notify Seller of
34 approval or disapproval of the terms of said documents, which shall not be unreasonably withheld. **Within ten (10) days**
35 **of acceptance,** Seller shall submit written request for a current Statement of Condition on the above loan. Seller warrants
36 that all loans in the transaction will be current at close of escrow. If there is no release of liability for assumptions, Buyer
37 and Seller are aware that lender may obtain a deficiency judgment in the event of a default.

39 **DUE ON SALE CLAUSE.** If the note and deed of trust or mortgage for any existing loan contains an acceleration or
40 DUE ON SALE clause, the lender may demand full payment of the entire loan balance as a result of this transaction.
41 Both parties acknowledge that they are not relying on any representation by the other party or the broker with respect to
42 the enforceability of such a provision in existing notes and deeds of trust or mortgages, or deeds of trust or mortgages to
43 be executed in accordance with this agreement. Both parties have been advised by the Broker to seek independent legal
44 advice with respect to these matters.

46 **BALLOON PAYMENT.** Both parties acknowledge they have not received or relied upon any statements or represen-
47 tations made to them by Broker regarding availability of funds, or rate of interest at which funds might be available, when
48 Buyer becomes obligated to refinance or pay off the remaining balance of any loan pursuant to the terms of this agree-
49 ment.

51 **PRORATION:** Rents, taxes, interest, payments on Bonds and Assessments assumed by Buyer, Homeowner Association
52 fees, and other expenses of the property to be prorated as of the date of recordation of the deed.

54 **REASSESSMENT OF PROPERTY TAX.** Buyer is advised that the property may be reassessed upon change of
55 ownership which may result in a tax increase/decrease.

57 **AGRICULTURAL DEFERMENT TAX.** Seller and Buyer are advised property may be subject to a deferred Agri-
58 cultural Recapture tax.

60 **DESTRUCTION OF PROPERTY.** If the improvements or any part of the property are destroyed, materially damaged,
61 or found to be materially defective prior to close of escrow, Buyer may terminate the transaction by written notice
62 delivered to Seller's Broker or Licensee, and all deposits shall be returned to Buyer. In the event Buyer does not elect to
63 terminate the agreement, Buyer shall be entitled to receive, in addition to the property, any insurance proceeds payable on
64 account of the damage or destruction.

66 **EXAMINATION OF TITLE.** In addition to any encumbrances referred to herein, Buyer shall take title to the property

Property Address **450 Alamosa Drive Sparks, NV 89436** APN **076-290-08**

Buyer ___/___ and Seller ___/___ have read this page

Page 2 of 6

© RSAR 01/03
LAND2/6

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

David H. & Loi

1  subject to: (1) Real Estate Taxes not yet due, and (2) Covenants, Conditions, Restrictions, Rights of way, and Easements
2  of record, if any, which do not materially affect the value or intended use of the property. Within five (5) days from
3  acceptance Buyer shall order a Preliminary Title Report and CC&R's, if applicable. Five (5) days from receipt thereof
4  the Buyer is allowed to examine the title to the property and to report in writing any valid objections thereto. All excep-
5  tions to the title contained in such report (other than monetary liens) shall be deemed approved unless written objection is
6  delivered to Seller within five (5) days. **If Buyer objects to any exceptions to the title, Seller shall use due**
7  **diligence to remove such exceptions at his own expense before close of escrow.** But if such exceptions cannot be
8  removed before close of escrow, all rights and obligations hereunder may, at the election of the Buyer, terminate and the
9  deposit shall be returned to Buyer less expenses incurred by Buyer to date of termination, unless he elects to purchase the
10 property subject to such exceptions. If Seller concludes he is unwilling or unable to remove such objections, Seller shall so
11 notify Buyer within ten (10) days of receipt of said objections. In that event, Buyer may terminate this agreement and
12 have all deposits returned less expenses incurred to date of termination.

**CLOSING COSTS**
15 ☐ Buyer, ☒ Seller shall pay for an owner's policy of title insurance.
16 ☒ Buyer, ☐ Seller shall pay for lender's title insurance policy.
17 Escrow Fee to be paid by ☐ Buyer, ☐ Seller ☒ split equally. Transfer Tax(es), if any, to be paid by ☒ Buyer, ☒ Seller. 50/50
18 All remaining closing costs shall be paid in customary manner and/or as required by law, ordinance and/or regulation.

20 **VESTED TITLE.** Title shall vest as designated in Escrow Instructions.

22 **PHYSICAL POSSESSION.** Physical possession of the property shall be delivered to Buyer upon recordation of the
23 deed.

25 **TAX WITHHOLDING (FIRPTA).** Unless the property is acquired for use as a primary residence and is sold for no
26 more than $300,000, Seller agrees to provide Buyer with (a) NON-FOREIGN SELLER AFFIDAVIT (PPC Form
27 101-V), or (b) WITHHOLDING CERTIFICATE FORM from the Internal Revenue Service stating that withholding is
28 not required. In the event none of the foregoing is applicable, Buyer must withhold 10% of the Gross Sales Price under
29 the FOREIGN INVESTMENT AND REAL PROPERTY TAX ACT (IRC Section 1445).

31 **OPTIONAL PROVISIONS.** Buyer and Seller agree that only the provisions initialed below by the Buyer are
32 included in this agreement.

34 **BUYER'S REVIEW AND INVESTIGATION.** Conditioned upon completion of inspection(s), investigation(s) and/or
35 test(s) and buyer's approval of items initialed below within __21__ days of acceptance of this offer.

36 Buyer                                                                                                    Buyer
37 [ __/__ ] CORNERS MARKED            Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
39 [ __/__ ] SURVEY                    Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
41 [ __/__ ] WELL (QUANTITY)           Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
43 [ __/__ ] WELL (QUALITY)            Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
45 [ __/__ ] PERCOLATION TEST          Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
47 [ __/__ ] APPRAISAL                 Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
49 [ __/__ ] OTHER _____     Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
50 [ __/__ ] OTHER _____     Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
51 [ __/__ ] OTHER _____     Paid by: ☐ Buyer, ☐ Seller        waived [DHW/LM]
52 [ __/__ ] ZONING                                                      waived [DHW/LM]
53 [ __/__ ] FUTURE LAND USE DESIGNATION(S)                              waived [DHW/LM]
54 [ __/__ ] AVAILABILITY OF UTILITIES                                   waived [DHW/LM]
55 [ __/__ ] IMPACT FEES                                                 waived [DHW/LM]
56 [ __/__ ] ENVIRONMENTAL (see Other)                                   waived [DHW/LM]
57 [DHW/LM] MINERAL RIGHTS                                               ~~waived~~ [ ]
58 [ __/__ ] WATER RIGHTS (in the amount of _____ )            waived [DHW/LM]
59 [ __/__ ] LEGAL ACCESS (ingress & egress)                             waived [DHW/LM]
60 [ __/__ ] EASEMENTS                                                   waived [DHW/LM]
61 [ __/__ ] ROAD MAINTENANCE AGREEMENT                                  waived [DHW/LM]
62 [ __/__ ] SUBJECT PROPERTY IS BUILDABLE                               waived [DHW/LM]

65 Other _____
66 _____

1  In the event the Buyer should fail to complete any inspection(s), investigation(s) and/or test(s) within the time pro-
2  vided and escrow shall have closed without any of those inspection(s), investigation(s) and/or test(s) having occurred,
3  the Buyer shall be deemed to have waived the Seller's and broker's liability for the results that such inspection(s),
4  investigation(s) and/or test(s) could have reasonably provided had they been conducted, except where provided by
5  law.

7  Conditioned upon buyers obtaining the following governmental approvals within _____ days of acceptance of this
8  offer:

10 ☐ Variance            ☐ Special Use Permits        ☐ Zone change & land use designations

12 ☐ Tentative Map       ☐ Parcel Map

14 Other _____

20 Buyer will have the right to perform any and all inspections and/or tests. Buyer will be responsible for the repair/
21 restoration or any damage to the property that may be caused by subject inspections and/or tests.

23 **OWNER'S ASSOCIATION DISCLOSURE.**
24   Buyer
25 [___]/[___] At time of acceptance, Seller shall deliver to Buyer an Addendum to Purchase Agreement for Common
26 Ownership Interest Properties, which by this reference shall be incorporated into this Agreement. Association transfer
27 fees of $ _N/A_____ to be paid by ☐ Buyer, ☐ Seller. The amount of any delinquent assessments including penalties, attorney's
28 fees, and other charges provided for in the management documents shall be paid current by the Seller at close of escrow.

30 **FLOOD HAZARD ZONE.**
31 Buyer has been advised that the property may be located in an area which the Federal Emergency Management Agency
32 has found to have special flood hazards and that, pursuant to the National Flood Insurance Program, it may be necessary
33 to purchase flood insurance in order to obtain any loan secured by the property from any federally regulated financial
34 institution or a loan insured or guaranteed by an agency of the U.S. Government. The purpose of the program is to provide
35 flood insurance at reasonable cost. **For further information, consult your lender or insurance carrier.**

37 **MEDIATION.**
38 Parties are aware that the local Association or Board of REALTORS® has a Dispute Resolution Service available should
39 a dispute arise between the buyer and the seller. A DRS brochure is available upon request.

41 **TAX DEFERRED EXCHANGE (INVESTMENT PROPERTY).**
42   Buyer
43 [___] [___] In the event that Seller wishes to enter into a tax deferred exchange for the real property described herein,
44 or if Buyer wishes to enter into a tax deferred exchange with respect to property owned by him in connection with this
45 transaction, each of the parties agrees to cooperate with the other party in connection with such exchange, including the
46 execution of such documents as may be reasonably necessary to effectuate the same; provided that: (a) the other party
47 shall not be obligated to delay the closing, (b) all additional costs in connection with the exchange should be born by the
48 party requesting the exchange, and (c) the other party shall not be obligated to execute any note, contract, deed, or other
49 document providing for any personal liability which would survive the exchange. The other party shall be indemnified and
50 held harmless against any liability which arises or is claimed to have arisen on account of the acquisition of ownership of
51 the exchange property.

53 **ADDITIONAL TERMS AND CONDITIONS:**

55 Other <u>1. Buyers are aware that this offer is subject to review and approval of the court. Buyers</u>
56 <u>are aware that the acceptance of this offer by the Trustee does not guarantee said Buyers to be</u>
57 <u>the purchasers of the subject property. Public notice will be given based on an accepted offer</u>
58 <u>by the Trustee and all Buyers will need to be present at a specified court hearing. The court</u>
59 <u>will then award the property to the Buyer(s) that the Court determines as the best Buyer.</u>
60 <u>2. Bonds and Assessments, if any, will be paid by the Seller, subject to Sellers approval of the</u>
61 <u>bonds and/or assessment amount.</u>
62 3. New Zip code may be 89441
63 4. Subject property may be next to or adjacent to "Open Range" land - Buyers to verify.
64 5. Subject property may be in a common interest community - Buyers to verify.

Property Address **450 Alamosa Drive  Sparks, NV 89436**  APN **076-290-08**
Buyer [X] [X] and Seller [ ] [ ] have read this page

Page 4 of 6

© RSAR 01/03
LAND4/6

THE FOLLOWING ADDENDA & EXHIBITS ARE ATTACHED AND MADE A PART OF THIS CONTRACT:
1. Duties Owed by a Nevada Real Estate Licensee.
2. Rangeland Disclosure.
3. Environmental Contact List.
4. Addendum to Purchase Agreement for Common-Interest Community Properties.
5. Before You Purchase Property in a Common-Interest Community Did You Know...
6. Information Regarding Private Well & Septic System.
7. Residential Disclosure Guide.

**EXPIRATION OF OFFER.** This offer shall expire unless acceptance is delivered to Buyer or to ___Clay Alder/Darlene Stanoff___ on/or before ___5___ ☐ A.M. ☒ P.M. on ___10/10/06___.

**FAX TRANSMISSION:** The facsimile transmission of a signed copy hereof or any counteroffer/amendment to the other party or his licensee shall constitute delivery of said signed document. Fax signatures may be accepted as originals.

**TIME IS OF THE ESSENCE.** Time is of the essence of this agreement.

**NEVADA LAW TO APPLY.** Nevada law shall apply to the interpretation and enforcement of this agreement.

**ATTORNEY FEES.** In the event either party hereto is required to obtain the services of an attorney to enforce this agreement, the prevailing party in any proceeding shall be entitled to reasonable attorney's fees and court costs including filing fees.

**ENTIRE AGREEMENT.** This document contains the entire agreement of the parties and supersedes all prior agreements or representations with respect to the property which are not expressly set forth herein. This agreement may be modified only by a writing signed and dated by both parties. **Both parties acknowledge that they have not relied on any statement of the real estate licensee or broker which is not herein expressed.**

**BROKERAGE FEE**
Seller agrees to pay in cash the following real estate commission for services rendered, which commission Seller hereby irrevocably assigns from escrow:

    Listing Broker's commission shall be as per separate listing agreement, and

___6.000___ % of the accepted price, or $ _____ , to the selling Broker; ___Dickson Realty___ .

irrespective of the agency relationship. Escrow instructions with respect to commissions may not be amended or revoked without the written consent of the Broker(s) herein.

Commission shall also be payable, by the defaulting party, upon any default by Seller or Buyer, or the mutual rescission of this Agreement by Buyer and Seller, for any reason other than one expressly authorized under the terms of this Agreement which prevents completion of the sale. This agreement shall not limit the rights of Broker and Seller provided for in any existing listing agreement.

---

**AGENCY RELATIONSHIP CONFIRMATION.** The following is the agency relationship for the Buyer.

SELLING OFFICE: _____
REPRESENTED BY: _____
is the licensee acting for (check one):
    ☐ the Buyer exclusively; ☐ the Seller exclusively, or
    ☐ both the Buyer and Seller (Consent to Act form required)

The State of Nevada form titled, *"DUTIES OWED BY A NEVADA LICENSEE"*, is hereby incorporated as an addendum to this agreement.

---

A Real Estate Broker or Licensee is qualified to advise on real estate. If you have any questions concerning the legal sufficiency, legal effect or tax consequences of this document or the transaction related thereto, consult with your attorney or accountant.

© RSAR 01/03
LAND4/6

Property Address 450 Alamosa Drive Sparks, NV 89436  APN 076-290-08
Buyer _____ and Seller _____ [ ___ ] have read this page
Page 5 of 6

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com     David H. & Loi

The undersigned Buyer acknowledges that he has thoroughly read and approved each of the provisions contained herein and agrees to purchase the herein described property for the price and on the terms and conditions specified. Buyer acknowledges receipt of a copy of this agreement.

DATED: Oct 4 2006    TIME: 3:00 PM    DATED: 6/4/06

Buyer: David H. McClenahan    Selling Office: Dickson Rlty
Buyer: Lois C. McClenahan    Licensee Name: Clay Alder
Buyer: _____    Licensee Signature: _____ (for receipt of deposit)
Buyer's Address: 470 Almosa Dr.    Office Address: _____
Sparks, NV 89441

Phone (O) 775-425-0145 (H) 775-425-5307    Phone (O) _____ (H) _____
Fax # _____

---

AGENCY RELATIONSHIP CONFIRMATION. The following is the agency relationship for the Seller.

LISTING OFFICE: Dickson Realty

REPRESENTED BY: Clay Alder and Darlene Stanoff
is the licensee acting for (check one):
☒ the Seller exclusively, or   ☐ both the Buyer and Seller (Consent to Act Form Required)
The State of Nevada form titled, *"DUTIES OWED BY A NEVADA LICENSEE"*,
is hereby incorporated as an addendum to this agreement.

---

Seller acknowledges that he has read and understands the provisions of this agreement and agrees to sell the herein described property for the price and on the terms and conditions specified.

Seller acknowledges receipt of a copy of this agreement. Authorization is hereby given the Broker(s) in this transaction to deliver a signed copy herein to Buyer and to disclose the terms of sale to members of a Multiple Listing Service or Association of Realtors® at close of escrow.

Subject to: Court approval

DATED: Oct 4, 2006    TIME: 2:30 PM    DATED: _____

Seller: Annabelle Savage BK Trustee Ch 7 for Scott K. Greene    Listing Office: Dickson Realty
Seller: _____    Licensee Name: Clay Alder and Darlene Stanoff
Seller: _____

Seller's Address: _____    Office Address: 500 Damonte Ranch Parkway #625
_____                         Reno, NV, 89521

Seller's Phone (O) _____ (H) _____    Phone (O) (775) 850-7000  (H) (775) 825-5007
                                            Fax # (775) 850-7011

Buyer or Buyer's Agent acknowledges receipt of a copy of the accepted agreement.

DATED: _____ TIME: _____    _____ Buyer/Agent

---

Property Address 450 Alamosa Drive Sparks, NV 89436  APN 076-290-08
Buyer [___] [___] and Seller [___] [___] have read this page
Page 6 of 6

© RSAR 01/03
LAND6/6

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com    David H. & Loi

| Company: | Services Offered: |
|---|---|
| Dickson Realty | Broker services in the purchase and sale of real property.[1] |
| Pinnacle Mortgage<br>Vista Mortgage | Mortgage lending services for all types of residential real property including existing homes and new construction. Purchase, refinance and home equity lending. |
| American Home Shield | Home warranty policies which protect against the breakdown of many systems due to normal wear and tear in the home you are buying or selling. |
| Pinnacle Insurance | Homeowner's insurance to protect your home and its contents. Insurance for commercial property is also available.[2] |
| First Centennial Title | Escrow services to handle the details in transferring the property in accordance with the real estate contract. Title Insurance to insure against loss due to certain title defects. Based upon a search of public records, this service brings to your attention any known problems with the title before closing. |

[1] Actual changes may vary according to the particular circumstances underlying the transaction, including the home value, coverage and limits, other requested terms and services, unusual market conditions, government regulations, property location and features, and other similar factors. Rates may not be the lowest available and are subject to change. For a free, no obligation quote, please contact the company directly.

[2] Insurance charges are based on factors such as age, location, size, value and construction of the dwelling, as well as presence of safety devices, when permitted by law. The change will also vary based on the type of coverage selected. Rates may not be the lowest available and are subject to change. Current rates for insurance are filed with the appropriate government authority where required by law, and depending on certain unique circumstances, may vary significantly from the rates set out above.

The Buyer and Seller hereby acknowledge the disclosure of the above-described interests and make the decision to utilize the Service Providers independent of any representations of the Broker(s) involved with this transaction.

I SIGN THIS DISCLOSURE WITH THE UNDERSTANDING THAT IF I HAVE ANY QUESTIONS OR CONCERNS I SHOULD CONSULT WITH A PROFESSIONAL OF MY CHOICE.

David H. McClenahan
Printed Name
_David H. McClenahan_ Date: 10/4/06
Buyer/Seller's Signature

Lois C. McClenahan
Printed Name
_Lois C. McClenahan_ Date: 10-4-06
Buyer/Seller's Signature

Annabelle Savage, BK Trustee Ch 7 for Sott K Greene
Printed Name
_____ Date: _____
Seller/Buyer's Signature

_____
Printed Name
_____ Date: _____
Buyer's Signature

# RANGE LAND DISCLOSURE

Nevada Law requires in NRS 113.065 that before the purchaser of a home or improved lot that is adjacent to open range signs a sales agreement, the seller shall, by separate written document, disclose to the purchaser information regarding grazing on open range. Such disclosure must contain a statement with the following language:

## Disclosure - This property is adjacent to "Open Range"

This property is adjacent to open range on which livestock are permitted to graze or roam. Unless you construct a **fence**[2] that will prevent livestock from entering this property, livestock may enter the property and you will not be entitled to collect damages because livestock entered the property. *Regardless of whether you construct a fence, it is unlawful to kill, maim or injure livestock that have entered this property.*

I, the below signed purchaser, acknowledge that I have received this disclosure and understand it:

Buyer(s): _David H. McClenahan_ (signed)      Date: _10-4/06_

Buyer(s): _Lois C. McClenahan_ (signed)      Date: _10-04-2006_

Seller(s): _Annabelle Savage BK Trustee Ch 7 for Scott K. Greene_ (signed)      Date: _10/9/06_

Seller(s): _____      Date: _____

Additional Notes:
[1]**NRS 568.355 "Open range" defined.** As used in NRS 568.360 and 568.370, unless the context otherwise requires, "open range" means all unenclosed land outside of cities and towns upon which cattle, sheep or other domestic animals by custom, license, lease or permit are grazed or permitted to roam.
(Added to NRS by 1983, 235)

[2]**NRS 569.431 "Legal fence" defined.** As used in NRS 569.431 to 569.471, inclusive, "legal fence" means a fence with not less than four horizontal barriers, consisting of wires, boards, poles or other fence material in common use in the neighborhood, with posts set not more than 20 feet apart. The lower barrier must be not more than 12 inches from the ground and the space between any two barriers must be not more than 12 inches and the height of top barrier must be at least 48 inches above the ground. Every post must be so set as to withstand a horizontal strain of 250 pounds at a point 4 feet from the ground, and each barrier must be capable of withstanding a horizontal strain of 250 pounds at any point midway between the posts.
(Added to NRS by 1991, 1147)

**Sellers:** The law requires that "The seller shall retain a copy of the disclosure document that has been signed by the purchaser acknowledging the date of receipt by the purchaser of the original document."

_____ Seller(s) Initials            _____ Buyer(s) Initials



ADDENDUM TO PURCHASE AGREEMENT
FOR COMMON-INTEREST COMMUNITY PROPERTIES



Addendum **A**

1  The undersigned BUYER hereby acknowledges receipt of "Before Your Purchase Property in a Common
2  Interest Community Did you Know..." describing a homeowners' rights and obligations within a common interest
3  ownership community.
4
5  Not later than __14__ days from the effective date of the purchase agreement to which this is appended, SELLER or
6  his authorized agent shall furnish to BUYER a resale package containing copies of all those documents specified in NRS
7  116 which are listed below. The BUYER may, by written notice, cancel the purchase contract until midnight of the fifth
8  calendar day following the date of receipt of the resale package, and this addendum serves as a provision to that effect.
9  If the BUYER elects to cancel the contract, he or she must hand deliver the notice of cancellation to the unit's owner
10 or his authorized agent or mail the notice of cancellation by prepaid United States mail to the unit's owner or his
11 authorized agent. Cancellation is without penalty, and all payments made by the BUYER before cancellation must be
12 refunded promptly.
13
14       a. Declaration if applicable.
15       b. Association Bylaws.
16       c. Rules and regulations of the association.
17       d. A certified statement setting forth the amount of monthly assessment for common expenses and any
18          unpaid assessment, of any kind currently due from the selling unit's owner.
19       e. Current year-to-date financial statement for the association, including, without limitation, the most
20          recent audited or reviewed financial statement. The financial statement must include a summary of the
21          reserves of the association required by NRS 116 and which must include, without limitation a
22          summary of the information in the study of reserves described in NRS 116.
23       f. The association's operating budget and information regarding the amount of the monthly
24          assessment for common expenses, including the amount set aside as reserves for the repair,
25          replacement and restoration of common elements.
26       g. A certified statement showing any unsatisfied judgements or pending legal actions against the
27          association and the status of any pending legal actions relating to the common-interest community of
28          which the unit's owner has actual knowledge.
29
30 The association shall provide a certificate containing the information required in item d and g above. The unit's owner
31 or his authorized agent shall include the documents and certificate in the resale package provided to the BUYER, and
32 neither the unit's owner or his authorized agent is liable to the BUYER for any erroneous information provided by the
33 association and included in the certificate, unless otherwise agreed by the parties in writing. If the association fails to furnish
34 the documents and certificate within the 10 days after requested by the SELLER or the SELLER's authorized agent,
35 the SELLER is not liable for the delinquent assessment.
36
37 **450 Alamosa Drive, Sparks, NV   89436**
38 Property Address
39
40 _David H McClenahan_  10/14/06      _Annabelle (signature)_   10/4/06
41 BUYER                   Date        SELLER                    Date
42 **David H. McClenahan**                **Annabelle Savage BK Trustee Ch 7 for**
43 _Lois C. McClenahan_  10-04-2006    _Scott Greene_
44 BUYER                   Date        SELLER                    Date
45 **Lois C. McClenahan**
46 SELLER agrees to use SELLER's best efforts to obtain the required information.

© RSAR 07/06
Page 1 of 1
COIMPURI/1

Dickson Realty South Branch 500 Damonte Ranch Pkwy, #625 Reno, NV 89521
Phone: (775) 850 - 7000 0    Fax: (775) 850 - 7010    Darlene Stanoff                                                    Lois C. % Davi
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com




# Before You Purchase Property in a Common-Interest Community
## Did You Know.....

1. **YOU GENERALLY HAVE 5 DAYS TO CANCEL THE PURCHASE AGREEMENT?**

When you enter into a purchase agreement to buy a home or unit in a common-interest community, in most cases you should receive either a public offering statement, if you are the original purchaser of the home or unit, or a resale package, if you are not the original purchaser. The law generally provides for a 5-day period in which you have the right to cancel the purchase agreement. The 5-day period begins on different starting dates, depending on whether you receive a public offering statement or a resale package. Upon receiving a public offering statement or a resale package, you should make sure you are informed of the deadline for exercising your right to cancel. In order to exercise your right to cancel, the law generally requires that you hand deliver the notice of cancellation to the SELLER within the 5-day period, or mail the notice of cancellation to the SELLER by prepaid United States mail within the 5-day period. For more information regarding your right to cancel, see Nevada Revised Statutes 116.4108, if you received a public offering statement, or Nevada Revised Statutes 116.4109, if you received a resale package.

2. **YOU ARE AGREEING TO RESTRICTIONS ON HOW YOU CAN USE YOUR PROPERTY?**

These restrictions are contained in a document known as the Declaration of Covenants, Conditions and Restrictions. The CC&R's become part of the title to your property. They bind you and every future owner of the property whether or not you have read them or had them explained to you. The CC&Rs, together with other "governing documents" (such as association bylaws and rules and regulations), are intended to preserve the character and value of the properties in the community, but may also restrict what you can do to improve or change your property and limit how you use and enjoy your property. By purchasing a property encumbered by CC&Rs, you are agreeing to limitations that could affect your lifestyle and freedom of choice. You should review the CC&Rs, and other governing documents before purchasing to make sure that these limitations and controls are acceptable to you.

3. **YOU WILL HAVE TO PAY OWNERS' ASSESSMENTS FOR AS LONG AS YOU OWN YOUR PROPERTY?**

As an owner in a common-interest community, you are responsible for paying your share of expenses relating to the common elements, such as landscaping, shared amenities and the operation of any homeowners' association. The obligation to pay these assessments binds you and every future owner of the property. Owners' fees are usually assessed by the homeowners' association and due monthly. You have to pay dues whether or not you agree with the way the association is managing the property or spending the assessments. The executive board of the association may have the power to change and increase the amount of the assessment and to levy special assessments against your property to meet extraordinary expenses. In some communities, major components of the common elements of the community such as roofs and private roads must be maintained and replaced by the association. If the association is not well managed or fails to provide adequate funding for reserves to repair, replace and restore common elements, you may be required to pay large, special assessments to accomplish these tasks.

4. **IF YOU FAIL TO PAY OWNERS' ASSESSMENTS, YOU COULD LOSE YOUR HOME?**

If you do not pay these assessments when due, the association may have the power to collect them by selling your property in a nonjudicial foreclosure sale. If fees become delinquent, you may also be required to pay penalties and the association's costs and attorney's fees to become current. If you dispute the obligation or its amount, your only remedy to avoid the loss of your home may be to file a lawsuit and ask a court to intervene in the dispute.

5. **YOU MAY BECOME A MEMBER OF A HOMEOWNERS' ASSOCIATION THAT HAS THE POWER TO AFFECT HOW YOU USE AND ENJOY YOUR PROPERTY?**

Many common-interest communities have a homeowners' association. In a new development, the association will usually be controlled by the developer until a certain number of units have been sold. After the period of developer control, the association may be controlled by property owners like yourself who are elected by homeowners to sit on an executive board and other boards and committees formed by the association. The association, and its executive board, are responsible for assessing homeowners for the cost of operating the association and the common or shared elements of the community and for the day to day operation and management of the community. Because homeowners sitting on the executive board and other boards and committees of the association may not have the experience or professional background required to understand and carry out the responsibilities of the association properly, the association may hire professional managers to carry out these responsibilities. Homeowners' associations operate on democratic principles. Some decisions require all homeowners to vote, and some decisions are made by the executive board or other boards or committees established by the association or governing documents. Although the actions of the association and its executive board are governed by state laws, the CC&Rs and other documents that govern the common-interest community, decisions made by these persons will affect your use and enjoyment of your property, your lifestyle and freedom of choice, and your cost of living in the community. You may not agree with the decisions made by the association or its governing bodies even though the decisions are ones which the association is authorized to make. Decisions may be made by a few persons on the executive board or governing bodies that do not necessarily reflect the view of the majority of homeowners in the community. If you do not agree with decisions made by the association, its executive boards or other governing bodies, your remedy is typically to attempt to use the democratic processes of the association to seek the election of members of the executive board or other governing bodies that are more responsive to your needs. If you have a dispute with the association, its executive board or other governing bodies, you may be able to resolve the dispute through the complaint, investigation and intervention process administered by the Office of the Ombudsman for Owners in Common-Interest Communities, the Nevada Real Estate Division and the Commission for Common-Interest Communities. However, to resolve some disputes, you may have to mediate or arbitrate the dispute and, if mediation or arbitration is unsuccessful, you may have to file a lawsuit and ask a court to resolve the dispute. In addition to your personal cost in mediation or arbitration, or to prosecute a lawsuit, you may be responsible for paying your share of the association's cost in defending against your claim.

Buyers Initials _DHM_ _KCM_

6. **YOU ARE REQUIRED TO PROVIDE PROSPECTIVE PURCHASERS OF YOUR PROPERTY WITH INFORMATION ABOUT LIVING IN YOUR COMMON-INTEREST COMMUNITY?**

The law requires you to provide a prospective purchaser of your property with a copy of the community's governing documents, including CC&Rs, association bylaws, and rules and regulations, as well as a copy of this document. You are also required to provide a copy of the association's current financial statement, including, without limitation, the most recent audited or reviewed financial statement, a copy of the association's operating budget and information regarding the amount of the monthly assessment for common expenses, including the amount set aside as reserves for repair, replacement and restoration of common elements. You are also required to inform prospective purchasers of any outstanding judgements or lawsuits pending against the association of which you are aware. For more information regarding these requirements, see Nevada Revised Statutes 116.4109.

7. **YOU HAVE CERTAIN RIGHTS REGARDING OWNERSHIP IN A COMMON-INTEREST COMMUNITY THAT ARE GUARANTEED YOU BY THE STATE?**

Pursuant to provisions of chapter 116 of Nevada Revised Statutes, you have the right:

    a. To be notified of all meetings of the association and its executive board, except in cases of emergency.
    b. To attend and speak at all meetings of the association and its executive board, except in some cases where the executive board is authorized to meet in closed, executive session.
    c. To request a special meeting of the association upon petition of at least 10 percent of the homeowners.
    d. To inspect, examine, photocopy and audit financial and other records of the association.
    e. To be notified of all changes in the community's rules and regulations and other actions by the association or board that affect you.

8. **QUESTIONS?**

Although they may be voluminous, you should take time to read and understand the documents that will control your ownership of a property in a common-interest community. You may wish to ask your real estate professional, lawyer or other person with experience to explain anything you do not understand. You may also request from the Office of the Ombudsman for Owners in Common-Interest Communities, Nevada Real Estate Division, at:

| Nevada Real Estate Division | | Nevada Real Estate Division |
|---|---|---|
| 2501 E. Sahara, Suite 202 | **OR** | 788 Fairview Drive, #200 |
| Las Vegas, NV 89104-4137 | | Carson City, NV 89701-5453 |
| Voice: (702) 486-4480 | | Voice: (775) 687-4280 |
| or toll free at (877) 829-9907 | | |
| Fax: (702) 486-4520 | | |

I/We acknowledge that I/we have received the above-information.

BUYER Signature: _David H Mc Clenahan_    Date: _10/04/06_ Time: _5:00 Pm_
David H. McClenahan

BUYER Signature: _Lois C McClenahan_    Date: _10-04-2006_ Time: _3:00 P.M._
Lois C. McClenahan

BUYER Signature: _____ Date: _____ Time: _____

BUYER Signature: _____ Date: _____ Time: _____

Page 2 of 2

© RSAR 10/05
COIMINFO2/2

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com     Lois C. & Davi




# Environmental Contact List

The following is a list of certain environmental issues which may affect real property in **Washoe County**, along with the names and phone numbers of agencies which may provide more detailed information. Since the following may not be an exhaustive list, buyers are strongly encouraged to investigate and obtain expert advice on all issues which may be of particular concern.

**Asbestos:**
Consumer Products Safety Commission
Washington, D.C. 20207
(800) 638-2772

**Earthquakes:**
Envirinmental Health & Safety
University of Nevada, Reno
(775) 784-4214 Robert Collins
Coordinator for Emergency Planning

**Electromagnetic Fields (EMF's):**
EPA-National Technical Information Service
(703) 487-4650
Sierra Pacific Power, Kuldip SanDhu
(775) 834-4581

**General Environmental Issues**
Nevada Dept. of Conservation & Natural Resources
Division of Environmental Protection
(775) 687-4670

**Mold and Fungus**
Washoe County District Health Department
(775) 328-2400

**Lead-Based Paint:**
U.S. Department of EPA, Region 9
(415) 947-8700
U.S. Dept. of Housing and Urban Development, Reno
(775) 784-5383

**Noxious Weeds:**
University of Nevada Cooperative Extension
(775) 784-1334
Nevada Department of Agriculture
(775) 688-1182

**Pesticides**
Nevada Dept. of Agriculture
(775) 688-1180

**Radon:**
Nevada Division of Health, Radiological Health Section
(775) 687-5394 ext. 279

**Underground Fuel Storage Tanks:**
(775) 328-6161, Jim English
(775) 328-2423, Jeanie Rucker

**Woodstoves:**
Washoe County District Health Department
(775) 784-7200

**Air Quality, Airport Noise, Groundwater Contamination, Water Quality and Quantity and Septic Systems:**
   Washoe County District Health Department (775) 328-2400
   Reno-Tahoe International Airport (775) 328-6402
   Nevada Water Resources State Engineer (775) 687-3861

**Flood Plain:**
   City of Reno, Community Development Department (775) 334-3894
   City of Sparks, Engineering Department (775) 353-2305 or (775) 353-2289
   Washoe County Engineering Department (775) 328-2041
   Federal Emergency Management Agency (FEMA) (800) 358-9616
   Flood Insurance Services (a fee service) (775) 689-8635

**Acknowledgment of Receipt:**

Name _David H McClenahan_    **David H. McClenahan** Date _10-04-06_

Name _Lois C. McClenahan_    **Lois C. McClenahan** Date _10-04-2006_

This list may not be all inclusive based on the particular needs of the buyer.

© RSAR 0206
ENVLSTI/I

Page 1 of 1

Dickson Realty South Branch 500 Damonte Ranch Pkwy, #625 Reno, NV 89521
Phone: (775) 850 - 7000 0    Fax: (775) 850 - 7010    Darlene Stanoff

Lois C. % Davi

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035    www.zipform.com

Nevada Residential Disclosure Guide

# Acknowledgement of Receipt

**Nevada Real Estate Division**

# RESIDENTIAL DISCLOSURE GUIDE

I/We acknowledge that I/we have received a copy of the Residential Disclosure Guide.

_David H Mc Clenahan_
(BUYER)/SELLER

_Lois C. McClenahan_
(BUYER)/SELLER

DATE _Oct 4, 2006_



State of Nevada
Department of Business & Industry
Real Estate Division

July 2006         Page 15 of 15         622

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com         Lois C. % Davi

# Information Regarding Private Well and Septic System

Property Address _____ 450 Alamosa Drive, Sparks, NV 89436 _____

The following information is provided to prospective buyers for informational purposes only regarding private well and/or Septic Systems.

Real Estate agents have no special training, knowledge or expertise concerning these systems. The Seller is required by law to disclose any problems with these systems on the SELLERS REAL PROPERTY DISCLOSURE FORM. The Seller's disclosure is not a substitute for thorough and professional inspections of the systems by licensed professionals. The Buyer is strongly urged to obtain such inspections. Performance in the past is not an indication of how the systems may function in the future. The performance of these systems may change over time and if they fail, the expense of repair, replacement or hook-up to a public system can be substantial. Significant inconvenience can occur during repair or hook-up.

Buyer is advised that in recent years there has been a declining water table in some areas. A declining water table may affect long-term water availability and quality. Water quality may vary and the use of a filtration device may be required. Large numbers of septic tanks have affected water quality in some areas.

There have been discussions on converting homes on private wells and septic systems to public water and sewer systems. The specific costs are unknown at this time.

There are several areas that may have a monthly fee associated with private well for remediation and possible future hook-up to a public systems.

A domestic well consists of many components, which may include pumps, wiring, pressure tanks, well casings, and filtration devices, all of which may wear out over time and need replacement. Cost for maintaining a well can be significant. A residential well is allowed anywhere in Nevada when a public water system is not available. A permit is required from the District Health Department for the drilling of a well. The water rights associated with the residential well is not a sellable right. For further information please contact Department of Water Resources.

A septic tank system is a private wastewater disposal system. The system consists of a septic tank and leach field located on the property. It is the responsibility of the owner to maintain the septic system. Septic systems may be prohibited in some areas and property owners with septic systems may be required to hook-up to a public system in the future.

If you are buying a home with a private well and/or septic system, it is the Buyer's responsibility to have the systems check by licensed professionals and to verify costs associated with owning these systems. Buyer is advised to check with the appropriate agencies to verify potential costs and time frames associated with hook-up to public systems.

NEITHER THE SELLER, NOR THE SELLER'S AGENT WARRANT THE CONDITION OF THE PRIVATE WELL OR SEPTIC SYSTEMS AND WILL NOT BE RESPONSIBLE FOR FUTURE PROBLEMS DISCOVERED AFTER CLOSE OF ESCROW.

Buyer acknowledges that they have read and understand this information statement and have received a copy on the date indicated below.

Buyer _David H McClenahan_____   Date _Oct 4, 2006_____

Buyer _Lois C. McClenahan_____   Date _Oct 4, 2006_____

Agent _____   Date _____

Page 1 of 1

© RSAR 01/03
WTRINFO 1/1

Dickson Realty South Branch 500 Damonte Ranch Pkwy, #625 Reno, NV 89521
Phone: (775) 850 - 7000 0    Fax: (775) 850 - 7010    Darlene Stanoff

Lois C. % Davi

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

## Authorization for Release of
## Water Quality and Water Quantity Testing Results

1  **Property Address:** _____ <u>450 Alamosa Drive</u> _____
2
3  _____ <u>Sparks, NV  89436</u> _____
4
5
6
7  In accordance with the Offer and Acceptance Agreement, it has been agreed between Buyer and Seller
8  that either one or both of the quantity and quality tests shall be accomplished. The agreed upon test(s) are
9  checked below.
10
11
12  ☐ Water quality test.
13
14
15  ☐ Water quantity test.
16
17
18  The undersigned Buyer and Seller authorize the provider(s) of the above tests to release a copy of results
19  to the Senior Engineer, Environmental Health Division, Washoe County District Health Department for the
20  sole purpose of assimilating data for the Groundwater Resource Data Center.
21
22  The undersigned parties understand that the release of this information is voluntary on their part.
23
24  Buyer has read and acknowledge the attached **Information Regarding Private Well and Septic**
25  **System** disclosure.
26
27
28
29  Buyer _____   Seller _____
30       David H. McClenahan                     Annabelle Savage BK Trustee Ch 7 for
31  Buyer _____   Seller  Scott K. Greene
32       Lois C. McClenahan
33  Date _____    Date _____
34
35  Copy provided to:
36  Buyer
37  Seller
38  Buyer's Agent
39  Seller's Agent
40  Water Quality Test Provider
41  Water Quantity Test Provider

Page 1 of 1                                                                    © RSAR 01/04
                                                                               WATERAUTH 1/1

Dickson Realty South Branch 500 Damonte Ranch Pkwy. #625 Reno, NV 89521                      Lois C. % Davi
Phone: (775) 850 - 7000 0    Fax: (775) 850 - 7010    Darlene Stanoff
            Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035   www.zipform.com