John White, Esq., Bar # 1741
335 West First St.
Reno, NV 89503
775-322-8000
Fax: 322-1228
john@whitelawchartered.com
Attorney for Debtor

E-Filed on November 7, 2006

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

IN RE:

SCOTT K. GREENE,

Debtor

Case No. BK-N 05-54727-gwz
Chapter 7

DEBTOR'S OPPOSITION TO MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES

Hearing Date: 11/21/06
Hearing Time: 10:00 a.m.

Comes now Debtor above named by and through undersigned counsel and files the following Opposition to the Trustee's motion to sell his homestead. This Opposition is made and based upon the pleadings on file herein and the below memorandum of points and authorities.

Dated: November 7, 2006.

WHITE LAW CHARTERED

By: John White

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

1

# MEMORANDUM OF POINTS AND AUTHORITIES

The facts are largely undisputed. The Debtor filed his first bankruptcy on August 27, 2004. At that time he was the owner of 67 acres of raw land located at 450 Alamosa, Reno, Nevada. The Debtor moved on the property with the intent of making it his homestead. A written declaration of homestead was filed with the Washoe County Recorders office on August 11, 2004. Please see Exhibit A. It is undisputed that the Debtor acquired this property more than 1,215 days before October 15, 2005.

When the Debtor filed the bankruptcy in 2004, he listed the value of his homestead at $240,000.00 with one encumbrance in the amount of $79,038.00. There was equity of $160,962.00. On or about October 8, 2004 Rena Wells filed an affidavit in support of her objection to the Debtor's homestead. A copy of that affidavit is attached hereto as Exhibit B (See Docket No. 14, filed 10/8/04 in Case 04-52579). She states that the land is worth between $250,000.00 and $260,000.00. If one were to grant Ms. Wells the benefit of the doubt, the property had maximum equity of $180,962.00. At that time the homestead exemption was $200,000.00.

11 U.S.C. 522 provides in pertinent part as follows:

(p)(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in–

(A) real or personal property that the debtor or a dependent of the debtor uses as a residence;

(B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;

(C) a burial plot for the debtor or a dependent of the debtor; or

2

(D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

(2)(A) The limitation under paragraph (1) shall not apply to an exemption claimed under subsection (b)(3)(A) by a family farmer for the principal residence of such farmer.

(B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

This section of the BAPCPA closes the mansion loophole. This is evident from the Legislative History:

> The bill also restricts the so-called mansion loophole. Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all the equity in their homes. In light of this, some debtors actually relocated to these states just to take advantage of their "mansion loophole" laws. S.256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days. The bill further reduces this opportunity for abuse by requiring a debtor to own the homestead for at least 40 months before he or she can use state exemption law; current law imposes no such requirement.

H.R. REP. NO. 109-31 (Part I) (2005), reprinted in 2005 (June) U.S.C.C.A.N. 102.

A footnote further explains:

> If the debtor owns the homestead for less than 40 months, the provision imposes a $125,000 homestead cap. In effect, this provision overrides state ex-

3

emption law authorizing a homestead exemption in excess of this amount and allows such law to control if it authorizes a homestead exemption in a lesser amount.

Id. at 102 n. 72.

The House Report explains § 322(a) of BAPCPA (which is now § 522(p) of the Bankruptcy Code):

> [This §] amends § 522 of the Bankruptcy Code to impose an aggregate monetary limitation of $125,000 . . . on the value of property that the debtor may claim as exempt under State or local law pursuant to § 522(b)(3)(A) under certain circumstances. The monetary cap applies if the debtor acquired such property within the 1,215-day period preceding the filing of the petition. . . ."

Id. at 148

In the case at bar, this Court held that establishing previously owned property as a residence and declaring it exempt within the 1,215 days is an acquisition. i.e. one may have acquired the property in question more than 1,215 days before filing the bankruptcy, but if he moves onto the property and claims it as his homestead within this period, it is an acquisition and subject to the $125,000.00 cap of 522(p).

At least one federal district court has rejected this distinction on similar facts. See *In re Sarah K. Rogers* \_\_ B.R. \_\_, 2006 WL 2956537 (U.S. Dist. LEXIS 75826) (Dist. Ct. N.D. Tx 2006), which held at page 4 that:

> [T]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the . . . constitutionally permitted liens against homesteads. *Dominguez v. Castaneda*, 163 S.W.3d 318, 329 (Tex.App.-El Paso 2005, pet. denied). However, the court concludes that because the language of the statute requires a quantitative, measurable interest,

Congress could not have meant for the term "interest," in the context of § 522(p), to extend to all forms of legal or equitable interest in property.

The *Rogers* decision is not relevant to the Trustee's motion to sell; however, its reasoning is. The *Rogers* court looked to *In re Rasmussen*, __ B.R.__, 2006 Bankr. LEXIS 2176, 2006 WL 2588731 (Bankr.M.D.Fla. Sept.8, 2006). It held that post acquisition appreciation was not an acquired interest. It ultimately concluded the term interest referred not to an ownership interest. Rather, it referred to the equity in the property. The analysis was based upon the unambiguous terms used by Section 522(p): the common definition of the term "amount"; the plain meaning of the statutory language; and the relationship between the language of § 522(p)(1) and § 522(p)(2)(B). See *Rasmussen*, supra, pps. 6-7.

The *Rasmussen* decision is not unique. See *In re Sainlar* 344 B.R. 669 (Bkrtcy M.D. Fla. 2006). In that case the Court looked to the effect of what would happen if post-acquisition appreciation was subject to the cap.

> Bank One's reading of §522(p) (1) would have the statute encompass not only all property purchased or acquired by debtors within the 1,215-day period, but all property purchased prior to the 1,215-day period in which the equity value increased as a result of appreciation in the property's value and/or a decrease of secured debt (a consequence of payments reducing the principal balance of a mortgage). Bank One's reading of §522(p) (1) is inconsistent with the plain language of the statute and the common definitions of its words.

*Sainlar*, supra p. 672.

*In re Blair* 334 B.R. 374 (Bkrtcy N.D. Tex. 2005) is one of the earliest published decisions to hold appreciation cannot be an acquisition. Judge Markell was aware of *In re Blair* when he wrote *In re Kane* 336 B.R. 477 (Bkrtcy D. Nev. 2006). Judge Markell expressly left the issue open:

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

5

n22 Given this disposition, it is unnecessary to decide the claims that equity due to appreciation accrued during the 1,215-day period preceding the commencement of the case, as well as equity attributable to the principal portion of any mortgage payments made during that same time, are subject to the cap regardless of the period of debtor's residency. See In re Blair, 334 B.R. 374 (Bankr. N.D. Tex. 2005). There is simply no evidence of any appreciation (or, for that matter, any payments) within the short period that debtors have been Nevada residents.

The appreciation/acquisition issue is wide open in Nevada. Undersigned counsel could not find one reported case which held post-acquisition appreciation of land within the 1,215 period was subject to the $125,000.00 cap. Given the statutory construction logic espoused by *In re Sainlar*, supra, it is unlikely such a case exists.

In the case at bar, the sale is for $370,000.00. The encumbrances are approximately $77,000.00. Commissions would be $22,200.00. The estate would net $270,880.00. Once the $125,000.00 homestead cap is paid to the Debtor, the Trustee is left with $145,880.00.

The exhibits demonstrate the maximum equity in the property when the Debtor filed his homestead was $180,962.00. This has since appreciated to $270,880.00. Since appreciation cannot be acquisition, the most the Trustee can take is the August of 2004 maximum equity of $180,962.00 minus the capped homestead of $125,000.00 which is $55,962.00. The Trustee is going to have $145,880.00 after paying closing costs, commissions, secured debt and the capped $125,000.00. Of that sum, $89,918.00 is post acquisition appreciation ($145,880.00 - $55,962.00).

In light of the foregoing, the Trustee should allow the Debtor an opportunity to match the $55,962.00 and not sell the property. If he cannot match this, then the Trustees distribution must be limited to this figure as there is no authority which allows her to keep post acquisition appreciation.

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Dated: November 7, 2006.

WHITE LAW CHARTERED

By: John White

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

# Exhibit A

```
DOC #  3081719
08/11/2004 10:53A Fee:15.00
            BK1
       Requested By
     SCOTT K GREENE
    Washoe County Recorder
  Kathryn L. Burke - Recorder
     Pg 1 of 2  RPTT 0.00
```

APN: 076-290-08

Recording requested by and mail documents and tax statements to:

Name: SCOTT K. GREENE

Address: PO BOX 5780

City/State/Zip: SPARKS, NV 89432

**DEC107**
Nevada Legal Forms & Books, Inc: (702) 870-8977
www.legalformsrus.com

## DECLARATION OF HOMESTEAD

**CHECK ONE**
- ☐ Head of Family
- ☐ Multiple single persons
- ☒ By Husband (filing for benefit of both)
- ☒ Single, Married or Widowed
- ☐ Married (filing joint declaration)
- ☐ By Wife (filing for benefit of both)

**CHECK ONE**  ☐ HOUSE  ☒ MOBILE HOME  ☐ CONDOMINIUM UNIT  ☐ OTHER

Name on title of property: SCOTT K. GREENE

do individually and severally certify and declare that the following named persons is/are residing on the land premises (or mobile home, condominium unit, townhouse) as follows:

SCOTT K. GREENE

located at (street address) 450 ALAMOSA DR.

City of RENO, County of WASHOE, State of Nevada,

and more particularly described as follows: **SUBDIVISION:** *(set forth legal description and commonly known address)*

Declaration of Homestead         Page 1 of 2         Initials _____

I/We claim the land and premises hereinabove described, together with the dwelling house thereon, and its appurtenances, or the described mobile home as a Homestead.

☑ No former Declaration of Homestead has been made by me, us, or either of us.

☐ This Declaration of Homestead constitutes an abandonment of the former Declaration recorded on __/__/__.

In Witness Whereof, I/We have hereunto set my hand/our hands on _____.

_Scott K Greene_ / _____
Signature of Declarant                          Signature of Declarant

SCOTT K. GREENE / _____
Print or type name here                         Print or type name here

STATE OF NEVADA )
COUNTY OF _____ )

On this _6th_ day of _Aug_____, 20_04___, personally appeared before me, a Notary Public _Scott K Greene_____
personally known to me to be the person(s) whose name(e) is subscribed to the above instrument who acknowledged that _HE_ he___ executed this instrument. Witness my hand and official seal.

_[signature]_                                   **GREG MCKAY**
                                                **NOTARY PUBLIC**
                                                **STATE OF NEVADA**
                                                APPT. No. 04-89885-2
                                                MY APPT. EXPIRES MAY 26, 2008

Notary Public
My commission expires: __by 05/26/2008__
Consult an attorney if you doubt this form's fitness for your purpose.

Declaration of Homestead            Page 2 of 2              Initials _____

# Exhibit B

1  GEOFFREY L. GILES
   State Bar Number 959                            Filed ECF
2  527 California Ave.
   Post Office Box 93
3  Reno, NV 89504

4  775.329.4999

5  Attorney for Rena Wells

6

7              UNITED STATES BANKRUPTCY COURT

8                   DISTRICT OF NEVADA

9                        * * *

10 IN RE:                         CASE NO. BK-N-04-52579-GWZ
                                  Chapter 13
11     SCOTT K. GREENE,
                                  **DECLARATION OF RENA WELLS**
12                                [with certificate of service]
                                  Hearing Date: Nov. 10, 2004
13                                Hearing Time: 10:00 am
                                  Estimated Time: 10 Minutes
14           Debtor(s),
                              /
15 _____

16     COMES NOW Rena Wells, pursuant to the penalties of perjury under 28 USC Sec. 1746, who

17 declares and states as follows:

18     1)   That my name is Rena Wells formerly known as Rena Pimpl and that the things set forth

19          herein are true and correct to the best of my knowledge, except for those things set forth

20          upon information and belief.

21     2)   That I have known Scott Greene for at least twenty (20) years and his corporation is the

22          party to sued me in case CV01-02322 Equi-Dent Technologies v. Rena Pimpl.

23     3)   That as of August 10, 2004 Scott Greene lived at; 780 Browning Drive, Reno, Nv 89506.

24     4)   That house is owned by Sharon Brandsness, the mother of Scott Greene, and information

25          and belief, may be in trust for Scott Greene.

26     5)   That on August 11, 2004 Scott Greene moved out of the aforesaid residence and began

27          dwelling in a camp trailer located upon 67 acres of raw land located 450 Alamosa, Reno,

28
Geoffrey L. Giles and
Associates
Post Office Box 93
Reno, Nevada 89504
775.329.4999

1     Nevada 89511.

2 6) There is no home, building or structure located upon this property, and there is no water well, sewer or electrical hook up at this property.

4 7) Upon information and belief Scott Greene has exceeded the time allowed for camping on raw land located in the County of Washoe.

6 8) I do not believe the Scott Greene is entitled to claim this raw land as a homestead.

7 9) Upon information and belief, the land is worth $250,000.00- $260,000.00,

8 10) Further declarant saith not.

Respectfully submitted this 8th day of OCTOBER, 2004

_____
Rena Wells

CERTIFICATE OF SERVICE:
Under the penalty of perjury the foregoing statement is true and correct:
    That I am an employee of Geoffrey L. Giles and on October 8, 2004 I mailed a true copy of the foregoing document to the following interested parties via first class mail:

/s/ Jeanne Giles
_____

Michael Lehners, Esq.
429 Marsh Ave
Reno, NV 89509

Nathan Zeltzer
326 W. Liberty
Reno, NV 89501

William Van Meter, TTE
PO Box 6630
Reno, NV 89513

# CERTIFICATE OF SERVICE

1. On November 7, 2006, I served the following document(s):
DEBTOR'S OPPOSITION TO MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES

2. I served the above-named document(s) by the following means to the persons as listed below:

[X] **a. ECF System**

GEOFFREY GILES geofgiles@yahoo.com, giles.jeanne@gmail.com

WILLIAM D COPE cope_guerra@yahoo.com

JEFFREY HARTMAN notices@bankruptcyreno.com

ANABELLE SAVAGE angiesavage@sbcglobal.net, nv06@ecfcbis.com

U.S. TRUSTEE - RN - 7 USTPRegion17.RE.ECF@usdoj.gov

MICHAEL LEHNERS mikelehners@yahoo.com

[X] **b. United States mail, Postage fully prepaid**

American Express
c/o Becket and Lee, LLP
PO Box 3001
Malvern, PA 19355-0701

HSBC Bank Nevada NA/HSBC Card Services III
By eCast Settlement Corp as its Agents
PO Box 35480
Newark, NJ 07193-5480

Lance Van Lydegraf, Esq.
526 Lander St.
Reno, NV 89509

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on: November 7, 2006          Name of Declarant: John White

Signature of Declarant: _____

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228