UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| In Re: | . | Docket No. BK-N 05-54727-GWZ |
| | . | |
| SCOTT K. GREENE, | . | Reno, Nevada |
| | . | September 11, 2006 |
| Debtor. | . | 2:03:40 a.m. |
| . . . . . . . . . . | . | |
| RENA WELLS, | . | |
| | . | |
| Plaintiff, | . | |
| | . | |
| vs. | . | ADV. 06-05009 |
| | . | |
| SCOTT K. GREENE, | . | |
| | . | |
| Defendant. | . | |
| . . . . . . . . . . | . | |

HEARING
ON MOTION BY DEBTOR TO ALTER/AMEND
JUDGMENT/ORDER RE DEBTOR'S
CLAIM OF EXEMPTIONS; ADVERSARY SCHEDULING
CONFERENCE  ON COMPLAINT BY RENA WELLS
AGAINST SCOTT K. GREENE, DISCHARGEABILITY
OF DEBT
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GREGG W. ZIVE
UNITED STATES BANKRUPTCY JUDGE

Electronic Court Recorder:   Jennifer Womack

Transcription:              Typewrite Services Inc.
                            P.O. Box 5804
                            Sparks, Nevada 89432-5804

Proceedings recorded by digital sound recording, transcript
produced by transcription service.

APPEARANCES:

For the Debtor:                          JOHN A. WHITE, JR., ESQ.
                                         335 West First Street
                                         Reno, Nevada 89503

For Rena Wells:                          GEOFFREY L. GILES, ESQ.
                                         527 California Avenue
                                         Reno, Nevada 89504

1          COURTROOM DEPUTY:  All rise.

2          THE COURT:  Please be seated.

3          This is in the matter of Scott Greene.

4          MR. WHITE:  Good afternoon, your Honor.  John

5  White for the movant, and the debtor, Scott Greene.

6          MR. GILES:  Geoff Giles for Rena Wells, your

7  Honor.

8          THE COURT:  Thank you.

9          This is a motion to alter/amend judgment brought

10  by debtor pursuant to Rule 9023.

11          I've read the motion, the notice;

12          I've read the opposition;

13          I've read the reply.

14          Have I read all your pleadings that have been

15  filed, Mr. White?

16          MR. WHITE:  No, your Honor.

17          THE COURT:  What else have you filed?

18          MR. WHITE:  I filed a reply.

19          THE COURT:  I read --

20          MR. WHITE:  No, there's no other pleadings that

21  are filed.

22          THE COURT:  Have I read all yours, Mr. Giles?

23          MR. GILES:  Yes, you have, your Honor.

24          THE COURT:  All right.

25          When I first read the motion, it did not cite any

1  basis under 9023; however, I've read the reply and I'm

2  assuming that the contention is that there was a manifest

3  error of law.

4         I would point out that, as noted, I provided

5  opportunity for the parties to brief the issues that I

6  ruled upon;

7         That I did indicate that I had some tentative

8  conclusions;

9         However, based upon my review of the law and the

10  facts of this case, I arrived at the conclusion that my

11  tentative and preliminary conclusions were in error;

12         And that's why I issued the written opinion that I

13  issued.  I saw no reason to take the evidence or any

14  further evidence.  The law appeared to me to be

15  straightforward;

16         I have gone back, reread all the cases that I've

17  cited in my opinion that -- and I've read the transcript of

18  the hearing that occurred on May 24, 2006;

19         I am of the firm conviction that even if you had

20  cited the points and authorities that you could have cited,

21  but didn't cite, Mr. White, that they are not applicable to

22  the law before me;

23         I think the law of the State of Nevada is clear;

24         And I think that when you read what Judge Markell

25  wrote in the Rahman decision, which I cited in my footnote

1    and I've gone back and reread, that the history of the

2    Nevada cases and review of the Nevada Constitution that

3    creates the homestead and Nevada Chapter 115 that applies

4    and creates the law that governs homestead, that a

5    homestead is a right or an interest in property separate

6    and independent from the real property itself;

7           And that was law with which I was not totally

8    familiar at the time that I issued my preliminary findings,

9    but became convinced was correct.  And that's what led to

10   the opinion.

11          And I could sit here, I could read I.H. Kent

12   Company v. Busscher, which is found at 297 F.2d 901.  It's

13   a Ninth Circuit 1960 opinion that involves the bankruptcy

14   laws -- or the homestead laws of the State of Nevada and

15   states, I think without exception, the law at Page 903:

16          "We agree with the trial court that the right of a

17           homestead is a personal one created to protect a

18           home and is completely inactive until activated by

19           a husband and wife or by either or by the head of

20           a family.  It is nothing but an inchoate right

21           that springs into effectiveness only by the

22           application and declaration of those named and in

23           no other manner."

24          And that is what I was trying to say in my written

25   opinion, that in fact it is a right.  But you don't acquire

1   the homestead until you actually -- until you live and

2   reside on the property.

3          But filing of the declaration itself, in my mind,

4   is analogous to filing a financing statement pursuant to

5   Article 9 as found in Chapter 104 of the Nevada Revised

6   Statutes.  You may have a security interest, and that

7   exists even before you file the financing statement, but it

8   may not be effective;

9          Likewise, you may have a homestead interest but

10  it's not effective until you record the declaration.

11         But you can own the real property and not have a

12  homestead until you reside on it with the intent to remain

13  there.  And that's only a right is the conclusion that I

14  arrived at.

15         And I went back and even reread the old case that

16  I cited at Page 6 of my opinion to make sure that the

17  analysis that I drew from that case still remained

18  accurate.

19         Because I'm not really interested what happened in

20  Washington, I'm not really interested what happened in

21  Nebraska.  What I'm interested is how the State of Nevada

22  interprets its law.  And I've got -- I even cited a case

23  from Vermont that's contrary to the cases that you cited

24  from Nebraska and Washington.

25         So I went back and reread Roberts v. Greer, and it

1  says exactly what I said it said.

2          So I must say, I don't think I have engaged in a

3  manifest error of law even if I consider the motion on its

4  merits.

5          I'll be glad to hear your argument.

6          MR. WHITE:  Thank you.

7          THE COURT:  But I have --

8          MR. WHITE:  I'll just --

9          THE COURT:  I've gone back and reread everything

10  in --

11          MR. WHITE:  I would just --

12          THE COURT:  -- case I was wrong.

13          MR. WHITE:  I will --

14          THE COURT:  And it may be some other court would

15  determine that I'm wrong, but --

16          MR. WHITE:  I'll adjust my comments in light of

17  your Honor's recent comments.

18          On Rahman, however, which I too read, he is

19  talking there about stacking I believe and he's not dealing

20  with 541 or --

21          THE COURT:  That's correct.  He was dealing with

22  whether or not a homestead exemption could be stacked.  And

23  we've dealt with that in exemptions --

24          MR. WHITE:  Right.

25          THE COURT:  -- in this court regarding automobiles

1  and homestead.

2        And in fact he cites a case of mine that I decided

3  in finding that you couldn't stack homestead exemptions.

4  So I read the same conclusion.

5        But he does talk about the homestead as being an

6  interest in the real property.

7        MR. WHITE:  Yeah.

8        And there is -- I went back and looked and I

9  brought with me the Volume 1, Property Restatement of

10 Property.  And they talk about that and, you know, how

11 property refers sometimes to the land or the thing and

12 sometimes to the legal relationship.

13       THE COURT:  Right.  And you have -- they have a

14 whole bundle of rights that relate to a piece of property.

15       MR. WHITE:  And they say in there that when you're

16 talking about the legal relationships that a privilege,

17 which is one of those legal relationships, is in that sense

18 an interest in property.

19       But when we take this and put it into the

20 bankruptcy context, and particularly under 541, which then

21 I think goes through to 522 at least in part, we see there

22 that the interest dealt with is some sort of property of

23 the estate.  And to be prop -- the property of the estate

24 is a property that's distributed to the creditors in a

25 Chapter 7 case such as this.

1          And if that thing cannot be distributed to the

2    creditors, if it cannot have value to the creditors, then

3    while it may be technically an interest in property, it is

4    not the kind of interest in property that 522 or 521 cares

5    about.

6          The Code has gone off or it has reduced the

7    typical reliance on title and rather talks to the real

8    aspects of property.  And one of those real aspects is that

9    property is assignable.

10          And the Code goes out of its way to say if there's

11    an anti-assignment thing you can't -- you know, it's not

12    enforceable.  And when we deal with preferences or

13    fraudulent transfers, we're always talking about bringing

14    something of value into the estate that might go to the

15    creditors.

16          But when we talk of homestead, as in referring to

17    the Kent case which your Honor cited, the court clearly

18    says that:

19               "The homestead right is not assignable.  It is a

20               right personal to the bankrupt and his wife and

21               creates no right in anyone else to act under such

22               right or privilege."

23          And that's essentially what we say is that --

24          THE COURT:  That was a case in which the debtor

25    attempted to assign or sell his homestead or right as part

1  of the security to Mr. Kent for which the bank was the

2  trustee; and you can't do that.

3          MR. WHITE:  Kent was a corporation.

4          THE COURT:  I.H. Kent --

5          MR. WHITE:  Yeah.

6          THE COURT:  -- then is a corporation --

7          MR. WHITE:  And --

8          THE COURT:  -- owned by Ira Kent.

9          MR. WHITE:  Right.  And the corporation attempted

10  to exercise --

11          THE COURT:  That's right.

12          MR. WHITE:  -- the right.

13          THE COURT:  And referred to language, the

14  homestead language contained in the deed of trust.  I'm

15  aware of the case.

16          MR. WHITE:  But in 522, for example, that begins

17  with at the very beginning value, defines value, it's

18  talking about something that has value to the creditors.

19  And so when it says an interest in property --

20          THE COURT:  And if the property --

21          MR. WHITE:  -- or an interest in --

22          THE COURT:  And if the property was not exempt and

23  the exemptions are determined by state law, then it would

24  be included in property of the estate.  But if it is exempt

25  under state law, it is no longer property of the estate,

1  eligible to be utilized to pay a dividend to creditors.

2           MR. WHITE:  Right.  And --

3           THE COURT:  And state law says that the homestead

4  is separate from the real property.  And that's why when it

5  says "acquires an interest," in 522(p), which I found is

6  applicable--nobody disagrees with that--

7           MR. WHITE:  Right.

8           THE COURT:  --then that is why it's limited to the

9  hundred and twenty-five thousand, because the homestead

10 itself is separate from the real property.

11          MR. WHITE:  I agree.

12          THE COURT:  And the homestead itself was obtained

13 when the debtor resided with the intent to remain on that

14 property;

15          And he did so, according to his own inconsistent

16 testimony;

17          But the one thing that is consistent is that he

18 did so within the 1210 days prior to the filing of his

19 second petition.

20          MR. WHITE:  Right.

21          THE COURT:  That means it's limited.

22          MR. WHITE:  Your Honor, and I don't -- I won't --

23          THE COURT:  That's all I said --

24          MR. WHITE:  I'll sit down here --

25

1          THE COURT:  -- in my opinion.

2          MR. WHITE:  -- in just a minute.

3          But, "may not exempt any amount of interest that

4    was acquired by the debtor."

5          And --

6          THE COURT:  And when did he acquire the homestead?

7          MR. WHITE:  But the homestead was acquired within

8    the 120-day period.  I'll agree with that.

9          THE COURT:  Okay.

10         MR. WHITE:  But it's not the kind of interest that

11   522 speaks of because it has no value to the estate.

12   522(a) --

13         THE COURT:  Well, no exempt --

14         MR. WHITE:  -- (2).

15         THE COURT:  -- asset has any value to the estate.

16         MR. WHITE:  Right.  And so it's not the kind of

17   interest --

18         THE COURT:  But it does provide value to the

19   estate because it limits the amount of the homestead to the

20   hundred and twenty-five thousand rather than the three

21   hundred and fifty thousand that would be available.  So it

22   does provide some potential economic benefit to the estate,

23   does it not?

24         MR. WHITE:  Acquired by the debtor, your Honor, --

25         THE COURT:  Does it not --

1          MR. WHITE:  -- is what the statute says.

2          THE COURT:  -- provide --

3          MR. WHITE:  Yes, it does.

4          THE COURT:  That's consistent then --

5          MR. WHITE:  But the --

6          THE COURT:  -- even with your argument.

7          MR. WHITE:  -- the interest was not acquired by

8   the debtor.  There, in that case, the interest is acquired

9   by the estate.

10          And the statute --

11          THE COURT:  Well, but it's acquired by the estate

12   because of the debtor's position.  But that's all.

13      (Pause in proceedings)

14          MR. WHITE:  Well, I don't want to be

15   argumentative, your Honor.

16          THE COURT:  I understand your argument.

17          MR. WHITE:  But if --

18          THE COURT:  I'm just using the statutory language,

19   as should be clear from when I conducted the earlier

20   hearing and then did my research.  And that's why I gave

21   people an opportunity to brief it.

22          I obvious -- I kind of read your opening motions

23   like you really didn't take me seriously about that, or

24   thought it was a collateral consideration when it truly was

25   not, Mr. White.

1           When I say I am interested in the subject, I'm

2    interested in it.

3           MR. WHITE:  Well, your Honor, I know.  But, for

4    example, your Honor cites to the <u>Brent</u> case.  That's the

5    only cite that you made for the statement that a homestead

6    is an interest --

7           THE COURT:  No.  That's the Vermont case.

8           MR. WHITE:  -- as a property.

9           THE COURT:  And then I go on and I cite <u>Roberts</u>

10   and I cite <u>Kent</u> and I'm going to the same point.  And I

11   also put the footnote in on the <u>Rahman</u> case.

12          Rather than go through the same analysis that

13   Judge Markell did, I simply incorporated and said I concur.

14          Candidly, I wasn't going to publish it.  I was

15   asked to publish it by my colleagues because they wanted

16   this --

17          MR. WHITE:  Well, I think --

18          THE COURT:  -- this published for guidance because

19   they happened to concur with my result as well.

20          MR. WHITE:  Well, your Honor, the -- an interest

21   that was acquired--which is the crucial language--that was

22   acquired by the debtor, must refer to an interest in

23   property.

24          THE COURT:  Yes.  That I understand.  And that

25   interest would be the homestead.

1           The homestead has to be in property.  But the

2     homestead is not the property.

3           MR. WHITE:  But the property--and I'll sit down on

4     this--but the property discussed --

5           THE COURT:  Do we agree or disagree on that?

6           MR. WHITE:  One more time, your Honor.

7           THE COURT:  Do we agree or disagree on that?

8           MR. WHITE:  Could you repeat it, please.

9           THE COURT:  The homestead must be in property.

10    That's by statute and by constitution in the State of

11    Nevada.  But the homestead is also distinct from the

12    property.

13          MR. WHITE:  Right.  Sure it is.

14          THE COURT:  And you can acquire the property at

15    day one but not acquire the homestead until day ten.

16          MR. WHITE:  Right.

17          THE COURT:  Because if you don't live there with

18    the intent to remain on that property, it can't be

19    homestead.

20          MR. WHITE:  Right.

21          THE COURT:  And it can't be the date of the

22    recording of the declaration because that could cause all

23    kinds of problems --

24          MR. WHITE:  Right.

25          THE COURT:  -- regarding the -- so it has to --

1    all that does is really perfect that inchoate right.

2           And my point is it's when you acquire the

3    homestead, when that residence with intent exists, that

4    that's what falls within that 1210-day period.

5           MR. WHITE:  And it does.  And there's a purely

6    legal question as to whether or not the interest that is

7    represented by the bundle of rights referenced as a

8    homestead is an interest in property under 541 or 522,

9    whether that interest acquired could possibly inure to the

10   benefit of the estate or to the creditors.

11          THE COURT:  And you're telling me if it can't

12   inure to the benefit --

13          MR. WHITE:  Right.

14          THE COURT:  -- of the estate that --

15          MR. WHITE:  It's a --

16          THE COURT:  -- it can't be an interest?

17          MR. WHITE:  It's a privilege, that it's the

18   opposite of an interest in property if you think about it.

19          THE COURT:  I see nothing in 522 that says that

20   the -- 522(p) that says that the interest acquired must

21   have been of some possible value to the estate.  I didn't

22   see that anywhere in this.

23          MR. WHITE:  No.  It's not directly there.  But --

24          THE COURT:  I couldn't find it in the legislative

25   history.

1           MR. WHITE:  Well, it's -- but it pervades the

2    Code, the concept of property of the estate.  Nobody would

3    go after preference if there was no value.  Nobody would go

4    after a fraudulent conveyance if there was no value.

5           Under 542(a), in fact, it says when you're going

6    after a preference --

7           THE COURT:  542?

8           MR. WHITE:  542(a) -- pardon me:

9                ..."a turnover from a custodian or entity other

10               than a custodian in possession of the property,

11               you go after it if you're the trustee,  unless

12               such property is of inconsequential value or

13               benefit to the estate."

14          And so if an interest in a homestead is an

15   interest in property, it has no value to the creditors.  It

16   is anti-value, it is not something that anybody involved in

17   trying to get money for the creditors would ever go after.

18          THE COURT:  And your point --

19          MR. WHITE:  And therefore it's not the kind of

20   interest that's considered as acquired in 522.  That's the

21   essence of what I think the clear error of your Honor is in

22   making a determination.

23          If you -- if I -- as I've done, and read the

24   Restatement of Property, everything is an interest in

25   property if you get right down to it.  And they're not

1  talking about everything.  They're talking about a property

2  interest that would be of value.

3          THE COURT:  But if a creditor were to challenge

4  the exemption, which is what occurred here, or the amount

5  of the exemption, ---

6          MR. WHITE:  Right.

7          THE COURT:  -- which is also what occurred here,

8  there is a benefit to the estate if that objector prevails

9  on either of those two --

10          MR. WHITE:  Right.

11          THE COURT:  -- claims.  And that's what happened

12  here.

13          MR. WHITE:  Right.

14          THE COURT:  I've said that it was exempt.  But

15  it's limited.  Therefore there is a benefit.  And therefore

16  that interest does have, or lack of that interest does have

17  potential value to the estate.  Just as if I found it

18  wasn't exempt at all, it would have some benefit to the

19  estate.  And it's still the same right, the homestead

20  right.

21          MR. WHITE:  But we see those -- there are many --

22          THE COURT:  Because the only thing that's exempt

23  is the equity in the State of Nevada, that three hundred

24  and fifty thousand dollars.

25          MR. WHITE:  Right.

1          We see similar concepts in the -- let's say a

2    debtor has four thousand dollars cash that would be

3    property of the estate and right before he files for

4    bankruptcy, the day before he trans -- he conveys that,

5    either pays his mortgage down or buys something that's

6    exempt with it.  We see this kind of thing there

7    where -- but there -- in that case which the Court might,

8    if it found fraud, set aside under pre-BAP, pre-2005 law;

9          But there there was an acquisition of an interest,

10   at least in the instance where he bought something with

11   that.  He changed the character from non-exempt to exempt.

12          THE COURT:  Now, are you saying that acquire means

13   purchased?

14          MR. WHITE:  I think it means more than -- it means

15   that there's something of greater value that the debtor has

16   which he didn't have before he did it and which would inure

17   to the benefit of the creditors.

18          THE COURT:  Well, he did not have a perfected

19   homestead, he had no homestead at all until he resided on

20   that real property with the intent to remain there.

21          MR. WHITE:  Right.

22          THE COURT:  All he had prior to that time was a

23   piece of real property.  But once he lives there with the

24   intent to remain there, he then has acquired the homestead

25   and upon recording of the declaration he has perfected that

1  homestead; and he can do that up to the time of the

2  execution sale.

3           MR. WHITE:  Right.

4           I mean, your Honor, I'm not -- back to -- then I

5  will sit down --

6           THE COURT:  Okay.

7           MR. WHITE:  -- is that the statute, I think, is

8  intended to look to the acquisition of something he didn't

9  already have of some value.

10          And the value that the debtor owns is the same.

11  The difference is whether the creditors can get it or not,

12  but the value that the debtor has the day after and the day

13  before he files a homestead is the same.  You don't -- your

14  house doesn't go up in value because you have --

15          THE COURT:  That's because you're mixing -- you're

16  not keeping independent the property from the homestead--

17  until he lives there.

18          The real property has a fair market value; all

19  right?

20          MR. WHITE:  Right.

21          THE COURT:  If the debtor files bankruptcy that

22  value is available to creditors.  I agree with you.

23          But that same property, if the debtor resides in

24  it with the intent to remain there, then while the fair

25  market value is the same what the debtor has is he has now

1  acquired something.  He's acquired the right to protect an

2  amount of equity in that property.  And he didn't have that

3  before.

4           MR. WHITE:  Yeah.  Well, I --

5           THE COURT:  Isn't that true?

6           MR. WHITE:  That is -- he, along with every member

7  of the public, has a right to exemptions.  It's a statutory

8  right.  It is not personal to him, it is not assignable to

9  him.  It is a privilege.  It is not the kind of interest

10 that Congress was talking about under 522 or trying to get

11 to.

12          THE COURT:  I understand.

13          MR. WHITE:  And that's my --

14          THE COURT:  I think I understand your point.

15          MR. WHITE:  Thank you, your Honor.

16          THE COURT:  Mr. Giles.

17          MR. GILES:  Understanding that brevity is the soul

18 of wit, I won't say anything further unless you have some

19 questions, your Honor.

20          THE COURT:  I don't.

21          I've reviewed it;

22          I've heard Mr. White's argument;

23          I believe that an interest acquired can refer to

24 the homestead interest which, as Mr. White has noted, is

25 independent of the real property;

1          That the debtor acquires that interest when the

2    debtor resides on the property with the intent to remain

3    there;

4          That in this case that happened within the 1210

5    days prior to the filing of the second bankruptcy--the

6    first bankruptcy doesn't count;

7          And therefore has an exemption that is limited to

8    a hundred and twenty-five thousand dollars in equity;

9          Without the amendment to the Code that became

10   effective in homesteads in April of 2005, he would have had

11   a 350,000-dollar exemption;

12         But Congress has amended the law;

13         And I believe that as a result of that amendment

14   that the limitation is applicable;

15         And that's what I said in the order that I

16   issued--what's the date of that?--July 27th and that shall

17   remain my order;

18         And I am denying the motion seeking to alter/amend

19   the judgment;

20         And I made my findings, I hope, clear;

21         And I've done it orally pursuant to Federal Rule

22   of Bankruptcy Procedure 7052 that incorporates, by

23   reference, Federal Rule of Civil Procedure 52.

24         I thank you all very much.

25         That leaves an adversary scheduling conference.

1          I did not see an adversary scheduling report

2    filled out by the parties.

3          MR. WHITE:  We had a standstill on that, your

4    Honor.  And I --

5          THE COURT:  Yes.

6          MR. WHITE:  And I realize --

7          THE COURT:  But I still would like --

8          MR. WHITE:  -- we should have --

9          THE COURT:  -- to have that filed.

10         So what I am going to do is I am going to set this

11   for a normal adversary scheduling conference --

12         MR. WHITE:  Okay.

13         THE COURT:  -- and let you folks fill out the --

14   meet, confer and fill out the necessary stipulation.

15         Could you give them a date, please.

16         COURTROOM DEPUTY:  Your Honor, we have September

17   20th and then --

18         THE COURT:  That's fine.  Let's get this over.

19         MR. GILES:  Could I move it beyond that?  I may be

20   indisposed for a few days, your Honor.

21         THE COURT:  Sure.

22         COURTROOM DEPUTY:  October 25th, your Honor, at

23   9:00.

24         MR. GILES:  Thank you.

25         THE COURT:  Does that fit your schedule?

1          MR. GILES:  I'm sure that'll be fine.

2          THE COURT:  Okay.  October 25th at?

3          COURTROOM DEPUTY:  Nine.

4          THE COURT:  Nine.

5          MR. WHITE:  Your Honor, just briefly, while I have

6    an audience with the Court.

7          THE COURT:  Yes, sir.

8          MR. WHITE:  My understanding is that Mr. Greene

9    will be filing an appeal of your Honor's decision and order

10   in this case.

11         And there has been a broker hired, and the trustee

12   is in the process of selling the property at this time.

13         It seems to me that the question at least is close

14   enough.  I know the statute requirements are the likelihood

15   to prevail.  So you're asking the judge in effect to

16   reverse himself.

17         THE COURT:  Are you asking for a stay?

18         MR. WHITE:  I'm asking for a time where I could --

19   a rapid time, an early time, and order shortening time or

20   something of that nature where I could file a motion for a

21   stay pending appeal and have it heard on very shortened

22   notice.

23         THE COURT:  Here?

24         MR. WHITE:  Yes, your Honor.

25         THE COURT:  Sure.  I think you have to have it

1  heard here first.  We'll find the date.  I'll grant the

2  oral request.

3           Talk to Mr. Giles about his schedule.

4           MR. WHITE:  Okay.

5           THE COURT:  And talk to Mrs. Duffy and get a date.

6           MR. WHITE:  Thank you.

7           THE COURT:  I don't have any objection to that.

8           MR. WHITE:  Thank you.

9           THE COURT:  I will tell you, based upon our

10  conversation today, that I've studied this in depth.  I'll

11  be glad to hear your argument and I'll consider what you

12  write.  But it's going to -- I think it's just fair to say

13  that it would have to be very persuasive to convince me.

14           MR. WHITE:  I think it's more getting it

15  determined --

16           THE COURT:  I think it's procedural and then you

17  can go to the --

18           MR. WHITE:  -- so that we can go --

19           THE COURT:  -- to the BAP or the district

20  court, --

21           MR. WHITE:  -- wherever.

22           THE COURT:  -- wherever you choose to go.

23           MR. WHITE:  Right.

24           THE COURT:  Okay.  That's fine.

25           MR. WHITE:  So that's why an early date is

1  important.

2          THE COURT:  These new statutes, it's always good

3  to try to get some type of interpretation of them.  I --

4          MR. WHITE:  I don't think I'll be handling the

5  appeal, your Honor.  I have been informed by the debtor

6  that he has other counsel that may have to deal --

7          THE COURT:  Well, I can't imagine an argument that

8  could be any stronger than the ones you've made, very

9  frankly.  I'll say that on the record.

10          MR. WHITE:  Thank you, your Honor.

11          COURTROOM DEPUTY:  All rise.

12          MR. GILES:  Thank you,

13      (Proceedings concluded at 2:31:03 p.m.)

14

15

16

17

18

19                          CERTIFICATE

20

21          I certify that the foregoing is a correct

22  transcript from the digital sound recording of the

23  proceedings in the above-entitled matter.

24

25  /s/ Marjorie G. Davall              November 11, 2006

27

1