```
          UNITED STATES BANKRUPTCY COURT
               DISTRICT OF NEVADA

In Re:              .      Docket No. BK-N 05-54727-GWZ
                    .
SCOTT K. GREENE,    .      Reno, Nevada
                    .      November 21, 2006
          Debtor.  .      10:27:21 a.m.
. . . . . . . . . .
```

HEARING
ON MOTION TO SELL FREE AND CLEAR OF LIEN;
PAYMENT OF SALES COMMISSION
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GREGG W. ZIVE
UNITED STATES BANKRUPTCY JUDGE

Electronic Court Recorder:   Sylvia Tilton

Transcription:               Typewrite Services Inc.
                             P.O. Box 5804
                             Sparks, Nevada 89432-5804

Proceedings recorded by digital sound recording, transcript
produced by transcription service.

APPEARANCES:

For the Debtor:                    JOHN A. WHITE, JR., ESQ.
                                   335 West First Street
                                   Reno, Nevada 89503

For Rena Wells:                    Hartman & Hartman
                                   BY: JEFFREY L. HARTMAN, ESQ.
                                   510 W. Plumb Lane, Ste. B
                                   Reno, Nevada 89503

For the Trustee:                   Cope & Guerra
                                   BY: WILLIAM D. COPE, ESQ.
                                   595 Humboldt
                                   Reno, Nevada 89509

Also Present:                      ANABELLE SAVAGE,  Trustee

1        THE COURT:  In the matter of Scott Greene.

2        MR. HARTMAN:  Good morning, your Honor.  Jeff

3   Hartman on behalf of Rena Wells.

4        Ms. Wells is present in the courtroom.

5        MR. WHITE:  Good morning, your Honor.  John White

6   on behalf of Scott Greene, debtor.

7        MR. COPE:  Good morning, your Honor.  Bill Cope

8   for Anabelle Savage, trustee.

9        And Anabelle Savage is present.

10       THE COURT:  All right.

11       I have a motion for an order authorizing the sale

12   of the property located at 450 Alamosa Drive, in Sparks.

13   It consists of approximately 67.11 acres;

14       This property has been the subject of numerous

15   hearings in front of this Court regarding the debtor's

16   claimed homestead exemption.

17       I entered an order dated July 27, 2006, where I

18   granted the homestead exemption notwithstanding

19   inconsistent positions the debtor had taken with certain

20   governmental agencies in court;

21       Found that he wasn't judicially estopped;

22       Found that he began to occupy the premises with

23   the intent to reside there, consistent with the Nevada

24   homestead requirements, in August of 2004;

25       And that therefore he was in -- that is when he

1  acquired the homestead;

2       That this case was filed October 15, 2005, within

3  the fifteen days, the requirement found in Section 522(p)

4  of the Bankruptcy Code that became effective in April of

5  2005;

6       I found that the homestead was a separate interest

7  that was acquired within that statutory period; therefore

8  the exemption was limited to a hundred and twenty-five

9  thousand;

10       However, I did deny the motion filed by Rena Wells

11  objecting to the objection in its entirety;

12       And granted a 125,000-dollar cap;

13       I denied a motion for reconsideration;

14       And it came up, frankly, as I remember it, in the

15  form of a motion to grant a stay which was denied by order

16  entered on September 28th of this year.

17       Has a stay been obtained?

18   (Brief pause)

19       THE COURT:  I don't even know where the appeal is

20  at.  Is it at the BAP?

21       MR. WHITE:  Your Honor, my understanding of the

22  appeal --

23       THE COURT:  Well, Mr. Hartman I think is --

24       MR. WHITE:  -- is that the debtor's appeal is

25  proceeding.  There was no cross-appeal filed of the --

1            THE COURT:  Where is it at?

2            MR. WHITE:  -- other order.  No motion for stay

3  has been filed.

4            It's before the district court here.

5            THE COURT:  Okay.

6            MR. WHITE:  I am going -- one of the first things

7  I am going to do is do today is ask this Court to

8  reconsider its order denying the stay pending appeal in

9  light of the Rogers case which we cited.

10           THE COURT:  I've read the Rogers case.  You don't

11  even have to make the motion.

12           It's based upon law which is Texas.  I disagree

13  with the analysis.  I'm not changing my mind.  I've been

14  through it too often.

15           I mean, you've really asked me to revisit it

16  today.  I'm not doing it.

17           MR. WHITE:  Okay.

18           THE COURT:  I denied the stay.

19           I've read the Rogers case.  I do not find it

20  applicable in this circuit, and I do not find it applicable

21  to my analysis.

22           MR. WHITE:  I ag --

23           THE COURT:  And I understand reasonable people can

24  disagree.

25           MR. WHITE:  Well, I think that was the point.

1           THE COURT:  But I think it's wrong.

2           MR. WHITE:  Okay.

3           And but the point, we did not at the time of the

4  hearing on the motion for stay cite that case.

5           THE COURT:  Well, you couldn't.

6           MR. WHITE:  And this was decided in October.

7           THE COURT:  I know that.

8           MR. WHITE:  And --

9           THE COURT:  But it's only -- it has no

10  precedential value.  I've read it.  I've considered it.

11           MR. WHITE:  It has --

12           THE COURT:  I am not going to grant the stay.

13           MR. WHITE:  All right.

14           But your Honor, it does have not precedential

15  value, not binding on this Court; but it is the only

16  appellate decision to consider the matter.  And it

17  disagrees with your Honor.

18           And it seems to me that a bond of some kind to

19  protect everybody, protect the status quo, would be in

20  order.

21           THE COURT:  I've got this oral motion.  Do you

22  want to respond to it, Mr. Hartman?

23           MR. HARTMAN:  Well, I'll do the best I can to make

24  it up.

25           Your Honor, I think that, number one, I agree with

1  your Honor that the <u>Rogers</u> case is of no value in the Ninth

2  Circuit and has no binding effect on you.

3        But I think we can't lose sight of the fact that--

4  and this was discussed in I believe the hearing on the

5  motion for -- the first one.

6        THE COURT:  For the stay?

7        MR. HARTMAN:  Right.

8        You don't get the property.  As an exemption you

9  get a hundred and twenty-five thousand dollars.

10        And the way the sale is postured, there will be a

11  hundred and twenty-five thousand dollars of cash plus more

12  after the payment of the first lienholder.  And that money

13  will be intact, and it represents the exemption.

14        So there's no harm to the debtor in going forward

15  with this.

16        THE COURT:  Is there going to be a distribution?

17        MR. HARTMAN:  That's --

18        THE COURT:  Other than --

19        MR. HARTMAN:  That hasn't been addressed.

20        THE COURT:  No.  I know that.

21        What you have is Sunwest is the holder of the

22  first.  It is -- as the only encumbrance on the property.

23  It's in the approximate amount of somewhere between

24  seventy-seven and eighty thousand dollars.

25        MR. HARTMAN:  Correct.

1          THE COURT:  That there would be commissions paid

2    of about twenty-two thousand dollars, and that's it.

3          The residual would be approximately a hundred and

4    forty-three to a hundred and forty-five thousand dollars

5    that would be paid to the trustee.

6          The debtor would obtain the one hundred and

7    twenty-five thousand dollars.

8          MR. HARTMAN:  Right.

9          And my point is that there's no risk at all to the

10   debtor in the appeal going forward.  Because we didn't file

11   a cross-appeal.  There's more than enough proceeds to cover

12   the exemption and to protect the ruling that was entered by

13   your Honor which is on the appeal.

14         And so there's no irreparable harm.  There's

15   simply no argument that the debtor is entitled to the

16   property rather than the cash.  And that's --

17         THE COURT:  Okay.

18         MR. HARTMAN:  -- the basis for denying a stay,

19   both at this level and at the --

20         THE COURT:  Obviously --

21         MR. HARTMAN:  -- district court level.

22         THE COURT:  Obviously Mr. White, you can file the

23   motion.

24         I'm just giving you the indication I've read the

25   Rogers case.

1           I'd certainly give you the opportunity to argue it

2    if you chose to do so.

3           What I was trying to do is indicate that I'm not

4    unfamiliar with it.

5           MR. WHITE:  Your Honor, I understand.

6           But the test on the stay is not whether your Honor

7    was right or wrong.

8           THE COURT:  I don't have the stay in front of me.

9           I understand what the --

10          MR. WHITE:  The test is --

11          THE COURT:  I understand what the test is.

12          MR. WHITE:  -- what the appeals court might do.

13          THE COURT:  I have to find there's a reasonable

14   chance of prevailing.  It's almost the same test as a

15   preliminary injunction, I think, Mr White.

16          Obviously I find this matter of great interest.

17   I've studied Rogers.

18          File the motion.  I'll be glad to look at it

19   again, or do it the right way and file it in the district

20   court.

21          MR. WHITE:  Well, your Honor, that -- first I

22   assume that today, as we proceed, I'll be able to present

23   the arguments made in my opposition.

24          THE COURT:  I've studied them.  I've read all the

25   cases cited by the parties.

1          MR. WHITE:  And that that will come up later.

2          I just simply wanted this Court to revisit--which

3    I think it can do--any of its orders that are entered.  And

4    I disagree with Counsel that there is irreparable harm.

5    And this is the man's property.

6          THE COURT:  No, it's not.  This is property of the

7    estate.

8          All that the debtor has is his homestead.  And

9    that is an equity.

10          MR. WHITE:  All right.

11          THE COURT:  It is not an interest in the property.

12    We know that in Nevada, Mr. White.

13          MR. WHITE:  That --

14          THE COURT:  I can't change the law of the State of

15    Nevada; that's the law I have to apply.

16          And --

17          MR. WHITE:  Well, --

18          THE COURT:  -- it's clear that that is the case.

19          MR. WHITE:  Oh, I'll wait.

20          THE COURT:  Sorry.

21          MR. WHITE:  I want to argue the other part of

22    this.

23          THE COURT:  Fair enough.

24          MR. WHITE:  Thank you.

25          THE COURT:  I've read the motion;

1            I've read the declaration of Anabelle Savage;

2            I've read the debtor's opposition;

3            I read the reply to the debtor's opposition filed

4    by Mr. Hartman on behalf of Ms. Wells;

5            I read the trustee's reply filed by Mr. Cope;

6            And I've read the order denying the stay pending

7    appeal entered on September 28th as a result of the hearing

8    occurring on September 27th;

9            I have in front of me, with me, and I have read

10   the <u>Vidvue</u> case, the <u>Sandler</u> case, the <u>Blair</u> case, the

11   <u>Rasmussen</u> case.  And I am familiar with those cases.

12           I am now going to make a tentative -- have I read

13   all the pleadings, first, that you filed, Mr. White?

14           MR. WHITE:  Yes.

15           THE COURT:  Have I read all the pleadings filed by

16   the trustee?

17           MR. COPE:  Yes, your Honor.

18           THE COURT:  Read all yours, Mr. Hartman?

19           MR. HARTMAN:  Yes, your Honor.

20           THE COURT:  All right.

21           I am going to utilize the exhibits that have been

22   submitted in support and in opposition to this motion.

23           What I have before me is a motion to sell.

24           There is no question that this is property of the

25   estate and the trustee has the right to sell the property;

1          There's also no question that there is no

2    impediment to the trustee selling the property;

3          Nobody has claimed that this property is not being

4    sold for an appropriate price; it's three hundred and

5    seventy thousand dollars;

6          At the time that these cases -- the first case I

7    think was filed in August of 2004; the second case was

8    filed October of 2005 -- the property was valued at two

9    hundred and forty;

10          So that there is more than -- it's a hundred and

11    thirty thousand dollars more than scheduled;

12          There is no doubt, none whatsoever, so far as I

13    can determine in the Ninth Circuit as demonstrated by the

14    Vidvue decision that you can find at 245 BR 644--it's a

15    2000 decision of the Ninth Circuit Bankruptcy Appellate

16    Panel--that post-petition appreciation is for the benefit

17    of the estate.

18          As noted at Pages 647 and 648 of that decision:

19          "The Ninth Circuit has consistently held without

20          limitation, that under 541(a)(6) the estate is

21          entitled to post-petition appreciation."  And

22          cites the Osberg Ninth Circuit case, the Hyman

23          Ninth Circuit case, and the Reed Ninth Circuit

24          case.

25          So if there is a hundred and thirty thousand

1  dollars of appreciation, as it appears, that is for the

2  benefit of the estate.

3          As I understand debtor's argument, is that based

4  upon the cases that he's cited--none of which are binding,

5  and the Rasmussen case is clearly dicta--that somehow in

6  addition to the hundred and twenty-five thousand dollars

7  homestead that I have allowed, that the debtor is entitled

8  to the appreciation, post-petition appreciation, I assume,

9  up to the amount of the full homestead exemption that might

10 have been available to the debtor at the time that he filed

11 in 2005.  And I guess that was -- was it still two fifty at

12 that time or two hundred?

13          MR. WHITE:  I --

14          THE COURT:  I can't remember when it went to --

15          MR. WHITE:  I don't remember when it --

16          THE COURT:  I can't remember when it went to three

17 hundred --

18          MR. WHITE:  -- changed.

19          THE COURT:  -- and fifty thousand.

20          MR. HARTMAN:  You're talking about the first case.

21          THE COURT:  I'm talking about the second case.

22          MR. WHITE:  I think in --

23          THE COURT:  The first case --

24          MR. HARTMAN:  Well, but --

25          THE COURT:  The homestead has to be determined at

1  the time that he filed the petition.

2          MR. HARTMAN:  Well, but --

3          THE COURT:  The petition that I've analyzed is the

4  petition -- the second petition.

5          MR. HARTMAN:  But when the second petition was

6  filed, and I believe it was --

7          THE COURT:  -- October of 2005.

8          MR. HARTMAN:  -- October of last year, the

9  amendments had already gone into effect.  So it was three

10 fifty.

11         THE COURT:  Okay.

12         MR. WHITE:  Right.  Okay.

13         THE COURT:  So it's probably at three fifty that

14 he would be able to claim.

15         MR. HARTMAN:  That's about four -- 522(p), yes.

16         THE COURT:  Yeah.  So it's three fifty.

17         I think that's your position, is it not?

18         MR. WHITE:  Yes, your Honor.  I might have stated

19 it a little differently, but I still -- I have comments I'd

20 like to make.

21         THE COURT:  Well, I'm going to give you the

22 opportunity.  But I just wanted to make sure I understood

23 your position, Mr. White.

24         My tentative conclusion is that position is

25 inconsistent with Ninth Circuit law;

1          That the cases that you cite really didn't deal

2    with the acquisition of the homestead within the 1215 days-

3    I think it's 1215 days--prior to the filing of the

4    petition.

5          And as I said, <u>Rasmussen</u> clearly is dicta; it

6    wasn't necessary.  That had to deal with a stacking issue

7    on the homestead exemptions.  And the court allowed the

8    statute and then just threw in a couple of extra sentences,

9    as far as I can determine, without any substantive

10   analysis.

11         And if appreciation belongs to the estate, I don't

12   see how it can be added to the equity cap.  But that's --

13   so that my tentative conclusion is to allow the sale;

14         And the debtor is entitled to a hundred and

15   twenty-five thousand dollars of the proceeds as his equity.

16         I'll be glad to hear your argument.

17         MR. WHITE:  Thank you, your Honor.

18         All of the cases that Counsel relies upon, without

19   exception, were decided prior to 522(p) coming into

20   existence.  And none of them refer to 522(p).

21         I think if we just think about it and look at the

22   statutory language and consider this Court's earlier ruling

23   which was that -- very carefully.  It was not the filing of

24   the homestead that constitute interest, it was the moving

25   on and the filing.

1          We're not going to prejudice Mr. Greene because he

2     owned this property before that.

3          THE COURT:  What I said was that the homestead was

4     acquired when the debtor moved onto the property with the

5     intent to remain there.

6          MR. WHITE:  Right.  Okay.

7          THE COURT:  That's consistent with Nevada law.

8          MR. WHITE:  So let's take --

9          THE COURT:  It is not the recording of the

10    declaration.

11         MR. WHITE:  Okay.

12         Let's take then the -- this example.  I have a

13    hundred and thirty thousand dollars non-exempt cash in my

14    bank account on the 1214th day.  I go and buy a house for a

15    hundred and twenty-five thousand dollars, pay cash for it.

16         So if I file bankruptcy the next day, five

17    thousand goes to the trustee, I keep a hundred and twenty-

18    five.

19         Our argument here today is the mere fact that I

20    waited until almost three years to file does not give the

21    trustee all of that equity on her, in effect, 5,000-dollar

22    interest.  She acquires whatever her interest is on the day

23    that I homestead the property.  Which in my hypothetical

24    was 1214 days before I filed for bankruptcy.

25         THE COURT:  What's the difference between that

1  argument and argument that the debtor made in <u>Vidvue</u>

2  attempting to use Section 544?

3          And the court held that 541(a)(6) is how you

4  determine property of the estate.

5          MR. WHITE:  Your Honor, when -- we went through

6  something like this before.

7          Let's just take, just for purposes of analyzing

8  this, are we going to tell every Nevada homeowner who has

9  homesteaded a home prior to the beginning of the 1215-day

10 period that the equity--because it's acquired, it's an

11 interest acquired--the appreciation --

12         THE COURT:  He bought -- let's make sure we're

13 saying the same thing here.

14         You buy the property outside of the 1215-day

15 period.

16         MR. WHITE:  I think there's two hypotheticals.

17 One, you buy it before and one you buy it --

18         THE COURT:  And you don't move --

19         MR. WHITE:  -- the day after.

20         THE COURT:  And you don't move onto the property

21 before.

22         MR. WHITE:  Oh, I -- you move on and -- I mean --

23         THE COURT:  That 522(p) is not applicable.

24         MR. WHITE:  Well, sure it is.  If you buy it and

25 move onto it on the 1214th day --

1          THE COURT:  Well, wait a minute.

2          If you obtain -- you buy it and move onto it with

3    the intent to make it your homestead on --

4          MR. WHITE:  -- within the three-year period.

5          THE COURT:  Oh, I see what you're talking about.

6          MR. WHITE:  Okay.

7          THE COURT:  I thought you said outside of it.

8          MR. WHITE:  Well, I tried to contrast the two.

9    But --

10          THE COURT:  If you do it -- well, let's do that.

11          If you buy the property and move onto the

12    property; let's say, four years you file bankruptcy;.

13          MR. WHITE:  Okay.

14          THE COURT:  522(p) is not applicable.

15          MR. WHITE:  Okay.

16          THE COURT:  We agree with that?

17          MR. WHITE:  We agree.

18          THE COURT:  Mr. Hartman, we agree with that?

19          MR. HARTMAN:  Yes.

20          THE COURT:  If you acquire the property and move

21    onto it at the same time, within the 1215 days of the

22    filing of the petition, then it is subject to the 125,000-

23    dollar cap unless it's property within the same estate.

24          MR. WHITE:  Right.  Okay.

25          THE COURT:  We're not going to use that exception.

1          MR. WHITE:  Right.  I understand.

2          THE COURT:  Do we all agree on that?

3          MR. HARTMAN:  Yes, your Honor.

4          MR. WHITE:  Yes.

5          THE COURT:  Here we have the third -- a third

6     alternative.  Buy the real property outside of the 1215-day

7     period, acquire the homestead interest within that 1215-day

8     period.

9          I found that the acquisition of the homestead

10    interest within that 1215-day period meant that the

11    125,000-dollar cap of 522(p) is applicable.

12         MR. WHITE:  Right.

13         THE COURT:  That's --

14         MR. WHITE:  Right.  It's just as if he had

15    purchased it within that 3.3-year period.

16         If he had had it sitting in his bank account

17    totally non-exempt and he -- and on the beginning of that

18    period that he purchases it on the 1214th, before he files,

19    for a hundred and thirty thousand dollars;

20         At that moment he's entitled to a hundred and

21    twenty-five thousand equity under the Court's reasoning;

22    the estate is entitled to five.

23         And if he files bankruptcy the next day, 1213th

24    day, the estate gets five thousand dollars.  He gets to

25    keep the hundred and twenty-five.

1          What I'm saying is that since he waited, he didn't

2     file, until--in this hypothetical--if he files 1214 days

3     later, after he acquires it, what Counsel is saying is that

4     because of that difference, the purpose of the statute--if

5     there is a purpose to that thing--is to handle the

6     difference to prevent people from going from non-exempt to

7     exempt right before bankruptcy.

8          Now in the situation that I am talking about --

9          THE COURT:  There was a compromise arrived at by

10    Congress because there were many claims that the homestead

11    exemption was being abused, especially in I think it's

12    seven states that have unlimited homestead exemptions--one

13    of which of course, or two of which of course are Texas and

14    Florida, where these cases that you rely upon come from.

15         And it was a compromise there because they said

16    okay, we won't give -- we're not going to affect the amount

17    of the homestead but we're going to limit -- unless that

18    homestead interest is acquired within the 1215 days prior

19    to the filing of the bankruptcy.  That was the compromise.

20         So it was to stop somebody from, oh, let's say, a

21    major oil company, energy company, from selling property in

22    Colorado that would be non-exempt, then investing it in

23    property in Texas or Florida and then immediately filing

24    bankruptcy to protect that millions dollars of equity.

25    That's what it was intended to protect.

1        You all it the mansion move fall in your papers,

2   and I think that's a fair representation.

3        MR. WHITE:  But taking Counsel's argument and my

4   hypothetical that the purchase is made right after the

5   beginning of the 3.3-year period, from exempt -- from non-

6   exempt to exempt.  And that if a bankruptcy had been filed

7   the day after that purchase was made, the trustee would get

8   five thousand.

9        THE COURT:  And now that -- now what you're

10  saying, it's unfair.  If the property has appreciated from

11  a hundred and thirty from that date to, let's say, 260 that

12  instead of five thousand, the trustee would be getting a

13  hundred and thirty-five thousand.

14       MR. WHITE:  Right.

15       The purpose of the statute was to protect that

16  five thousand, the day that the homestead is filed --

17       THE COURT:  The problem I have with that -- I

18  understand that.

19       The problem I have with that is the Ninth

20  Circuit's clear ruling in numerous cases that that

21  appreciation is for the benefit of the estate under 541.

22  And it is.

23       MR. WHITE:  But the five thousand then grows under

24  that -- I do not think, because if we look at 522(p) --

25       THE COURT:  Isn't that what Vidvue says?

1          MR. WHITE:  Huh?

2          THE COURT:  Isn't that exactly what <u>Vidvue</u> says?

3          MR. WHITE:  But your Honor, it was -- I'm looking

4   at the statute that we're talking about, that governs this.

5    Which is 522(p).

6          And it says --

7          THE COURT:  Why does it govern it?

8          MR. WHITE:  -- an interest acquired after --

9   during that period, that interest acquired.  And what this

10  Honor -- what your Honor's tentative rule says is that

11  appreciation --

12         THE COURT:  What you're saying is that --

13         MR. WHITE:  -- is an interest acquired.

14         THE COURT:  -- if the interest acquired was the

15  homestead, that the homestead is what is appreciation and

16  not the value of the real property.

17         MR. WHITE:  At least an allocation.

18         THE COURT:  Is that what you're saying?

19         MR. WHITE:  To some extent, at least an

20  allocation.

21         THE COURT:  How does a homestead ex -- how does

22  the homestead increase?  What increases is that value of

23  the property.

24         The homestead exemption is determined on the date

25  of the filing of the petition.  It does not increase.  It

1  is determined as of that date.

2          What if the legislature -- somebody files on

3  September 30th and the effective date and the increase of

4  the homestead exemption in the State of Nevada is October

5  1st, the next day, that debtor doesn't get the benefit of

6  that.

7          MR. WHITE:  That, your Honor, I agree with your

8  Honor.  And that was under law before 522(p).  That's under

9  state law.  That's under the traditional bankruptcy law.  I

10  agree with all that.

11          522(p), which is the statute that caught us here,

12  says interest acquired.

13          And the effect of your Honor's tentative ruling

14  now is that in my hypothetical that five thousand, which is

15  all Congress wanted to keep for creditors--the five

16  thousand that was non-exempt on the day the homestead was

17  recorded and the property purchased and the debtor moved

18  onto it--that grows and, let's say, on the day it files.

19          THE COURT:  So the homestead grows.

20          MR. WHITE:  Right.

21          To accomplish the purpose --

22          THE COURT:  Your point would be --

23          MR. WHITE:  -- of the statute.

24          THE COURT:  Your point would be that any

25  appreciation in the property between the date of the

1  filing and --

2          MR. WHITE:  -- of the homestead.

3          THE COURT:  No.  It's between the date of the

4  filing and the time that the property is sold would inure

5  to the benefit of the debtor until the amount of the

6  homestead exemption is reached.

7          MR. WHITE:  Right.

8          THE COURT:  Thereby --

9          MR. WHITE:  Well, I --

10          THE COURT:  Thereby destroying the cap of a

11  hundred and twenty-five thousand dollars.

12          MR. WHITE:  No, your Honor.  I don't think

13  that -- I don't -- maybe I'm not understanding, your Honor.

14   But I -- but to me, if we -- the hypothetical -- our

15  actual case shows the same thing.

16          THE COURT:  Well, let's take a look at this.

17          Our actual cases is this way.  Let's assume that

18  the scheduled value is accurate, two hundred and forty

19  thousand dollars --

20          MR. WHITE:  Okay.

21          THE COURT:  -- on the date of the filing.

22          Now I have a sale at three hundred and seventy

23  thousand dollars, but there's costs involved.  Probably

24  the -- let's take a look and just say there's eighty,

25  twenty-two -- so I'd say take a hundred thousand.  So

1  really the equity that would be available, the way I'd look

2  at it, after costs and payment of the first--okay?--would

3  be about two hundred and seventy thousand dollars.

4          MR. WHITE:  No.

5          THE COURT:  That's an increase of about thirty

6  thousand dollars.

7          Do you see what I'm doing, Mr. White?

8          MR. WHITE:  I went through the numbers, as I

9  understood them, in the brief.

10          THE COURT:  Let's go through your numbers there.

11  Let's use yours.  I read yours.

12          MR. WHITE:  But the --

13          THE COURT:  Let's take a look at your numbers.

14  You've got it at Page 6.

15          We don't disagree.  You just did what I did.  You

16  said the estate would net about two hundred and seventy

17  thousand eight eighty.  So we're there.

18          MR. WHITE:  Okay.

19          THE COURT:  That would be the equity, would it

20  not?

21          MR. WHITE:  Right.

22          THE COURT:  Okay.

23          Once you subtract a hundred and twenty-five

24  thousand to the trustee, the remainder is about a hundred

25  and forty-five thousand eight eighty.

1           MR. WHITE:  Right.

2           THE COURT:  Yeah.

3           It's going to be somewhere between one forty-three

4  and one forty-six, somewhere in that area; we know that.

5           MR. WHITE:  Okay.  Right.

6           THE COURT:  Okay.

7           The maximum equity in the property when the debtor

8  filed his homestead was a hundred and eighty thousand nine

9  hundred and sixty-two dollars.

10           Now, I don't know.  I'm assume -- I don't know

11  where that came from.  Can you explain to me how you

12  arrived at that?

13           MR. WHITE:  Well, yes, your Honor.  By taking the

14  value that is listed --

15           THE COURT:  The two forty?

16           MR. WHITE:  The two forty.  And subtracting the

17  encumbrances of seventy-seven thousand.

18           THE COURT:  Well, it doesn't add up.  That's my

19  point.

20           MR. WHITE:  Well then, I may -- I may not --

21           THE COURT:  Do you see what -- I mean, the --

22  because you have to add in the costs of sale.

23           MR. WHITE:  Yeah.

24           THE COURT:  So it's still, if it was worth two

25  forty it's worth one forty.  It looked to me like the

1  maximum equity could be a hundred and forty thousand

2  dollars.

3          MR. WHITE:  Well, the encumbrances were seventy-

4  seven.

5          THE COURT:  Right.

6          MR. WHITE:  They may have been more.

7          THE COURT:  The encumbrances --

8          MR. WHITE:  With commissions and added.

9          THE COURT:  If you do that.

10          But even if you're right at seventy-seven, do you

11  see, if you add that to the amount that's two hundred and

12  fifty-six thousand dollars.

13          MR. WHITE:  Right.

14          THE COURT:  And then if you add the costs of sale,

15  you're up to two hundred and seven -- it's the same amount.

16   That's my point.

17          So if it's two forty, you subtract a hundred

18  thousand dollars of the first and about twenty thousand

19  dollars in costs of sale.  That means the equity is a

20  hundred and forty thousand dollars.

21          MR. WHITE:  All right.

22          THE COURT:  Not a hundred and eighty.

23          MR. WHITE:  Okay.

24          THE COURT:  Do you agree with me?

25          MR. WHITE:  I cannot disagree with you, your

1  Honor.

2          THE COURT:  Okay.

3          And therefore what the appreciation is under your

4  scenario is fifteen thousand dollars.

5          MR. WHITE:  Well, --

6          THE COURT:  And I'm saying that that appreciation

7  belongs to the trustee under the Vidvue case.

8          MR. WHITE:  Well but, your Honor, okay.  But

9  522, what was 522 trying to do?  522(p) was --

10          THE COURT:  But you can't look at it in a vacuum.

11          MR. WHITE:  You can look at the purpose of that

12  statute.  Which was to stop the potential debtor from

13  converting non-exempt to exempt during that period of time.

14          THE COURT:  And if he files --

15          MR. WHITE:  And when he did --

16          THE COURT:  -- and if any debtor files, the

17  appreciation in the property under 541 goes to the benefit

18  of the estate.  That's the other burden that a debtor has

19  when a debtor files a bankruptcy case.

20          MR. WHITE:  But when he filed the homestead, when

21  he moved on the property, that's when the act that Congress

22  is looking at occurred.  And Congress --

23          THE COURT:  Well, 522(p), that is my analysis of

24  522(p).

25          MR. WHITE:  Well --

1          THE COURT:  And I understand some courts may

2     disagree --

3          MR. WHITE:  Right.

4          THE COURT:  -- based upon their own state laws.

5          MR. WHITE:  But -- but --

6          THE COURT:  And that's why I don't find it's

7     applicable.

8          MR. WHITE:  It's law of the case here for now.

9     It's law of the case.

10         THE COURT:  Absolutely.

11         MR. WHITE:  And so that's the act that Congress is

12    looking at and that's what Congress wanted to prevent or at

13    least protect that which was converted above one twenty-

14    five for the benefit of the estate.

15         And so what Counsel is doing though is, in effect,

16    giving all of the appreciation to that smaller amount.

17    Back to my original hypothetical.

18         THE COURT:  The appreciation --

19         MR. WHITE:  That five thousand grows to whatever.

20         THE COURT:  The appreciation is --

21         MR. WHITE:  It should at least be allocated.

22         THE COURT:  Under the Ninth Circuit law the

23    appreciation goes to the benefit of the estate, be paid to

24    creditors; and, if creditors are paid 100 percent and

25    there's money left over, goes back to the debtor.

1            MR. WHITE:  Well, I think what I'm doing then is
2  disagreeing with that -- those set of pre-522 rules that
3  say that the equity is determined on the date of the filing
4  of the bankruptcy petition;
5            Because while that may be the equity --
6            THE COURT:  The exemption, the exemption is
7  determined on the date of the filing of the petition;
8            The appreciation in the value of the property
9  under 541 belongs to the trustee;
10           And it may well in fact have an economic
11 detriment, as you have eloquently argued, for the debtor.
12 But that's how those sections work together, in my mind.
13           MR. WHITE:  But -- okay.  Then I'll sit down.
14           But I think that even if we accept that the
15 equities determine that equity on the date of filing of the
16 petition, that equity that Congress is seeking to protect
17 is the amount that was converted to not -- to exempt
18 property during that three-year period, not an additional
19 amount.
20           THE COURT:  That makes a large assumption.
21           MR. WHITE:  Well --
22           THE COURT:  That Congress understood 522(p)
23 interacted with 541 in the Ninth Circuit.
24           MR. WHITE:  Well --
25           THE COURT:  I couldn't find any legislative

1   history that supports that.

2        MR. WHITE:  I think the effect though of the

3   debtor -- of the trustee's argument here is really to say

4   to all people in this state that if they acquire property

5   within that three-year period, the appreciation belongs to

6   the estate if they have to file bankruptcy.  And I don't

7   think Congress intended that.

8        And thank you, your Honor.

9        THE COURT:  Thank you.

10       Mr. Cope.

11   (Brief pause)

12       THE COURT:  Mr. White--and I'm not being at all

13   facetious--I enjoyed the argument because it tests the

14   theory, and I appreciate your bringing it up.  Thank you.

15       MR. COPE:  Yes, your Honor.  I'll be brief and

16   defer to Mr. Hartman.

17       But maybe it's just me.  But my reading of 522(p)

18   is that the debtor gets a 125,000-dollar homestead

19   exemption if he acquires that exemption in the 1215 days

20   prior to the bankruptcy.

21       Then you go to Vidvue, Hyman, and those cases.

22   And the appreciation is property of the estate in the Ninth

23   Circuit.

24       Those other cases, whatever they do mean, don't

25   and shouldn't apply here.  And I think it's as simple as

1  that.

2          And the hundred and forty-five or 140,000-dollar

3  net proceeds of the sale should be property of the estate.

4          THE COURT:  Okay.

5          MR. COPE:  Thank you.

6          THE COURT:  Mr. Hartman.

7          MR. HARTMAN:  Just a couple of points, your Honor.

8          If I recall correctly, in Mr. White's opposition

9  he acknowledged that the Rogers case is not applicable to

10 this motion.

11         THE COURT:  He did.

12         MR. HARTMAN:  But what he did was he said well,

13 within the Rogers decision there's this case called

14 Rasmussen; and we think Rasmussen supports our position.

15         And it took me about three times in reading

16 Rasmussen to understand what that court was trying to

17 devine from the language of 522(p).

18         And I think I put it succinctly on Page 3 of my

19 reply, where I talk about the section between what the

20 Court determined to be active conduct by the debtor versus

21 passive conduct.

22         THE COURT:  I think that's what Judge Williamson

23 may well have been trying to do.

24         MR. HARTMAN:  Right.  And I --

25         THE COURT:  And I don't have that here.

1          MR. HARTMAN:  Well, the --

2          THE COURT:  And it's dicta.

3          MR. HARTMAN:  I agree that it's dicta.  But

4   there's no support for that in the statute or in the

5   legislative history.  And that's the problem that I have

6   with the <u>Rasmussen</u> decision.

7          And I understand Mr. White's position.  But it's

8   not the trustee that's taking this position.  Mr. Greene's

9   problem is with Congress.

10          THE COURT:  Okay.

11          MR. HARTMAN:  Because Congress said--and they made

12   an arbitrary decision--1215 days is the cutoff.  If you

13   acquire your homestead, regardless of the state, during

14   that period of time you are capped with the exception of an

15   equity rollover from the same state.

16          Now in the -- I'd like to draw an analogy.  And it

17   may seem a little bit obtuse.  But I think it's important.

18          Under a preference analysis a creditor can get

19   paid a million dollars on the 91st day and be completely

20   safe;

21          He gets paid the same million dollars two days

22   later, and by the arbitrary time line that was set by

23   Congress in 547(b), because he's within the ninety days

24   before the petition is filed, he's subject to having to

25   give that million dollars back.

1          And there's no real difference, except it's an

2    arbitrary time line that Congress put in because they had

3    to set a deadline; they had to pick a date.

4          Now Mr. Greene could have avoided all of this

5    problem by moving onto the property before the 1215 days.

6    Obviously he didn't know that Congress was going to pass

7    522(p).

8          But it's not the trustee's fault that the facts

9    and circumstances that were handed to her when this case

10   was filed exist.  And she is entitled to apply, and ask

11   this Court to apply, the law of 522(p).

12         The Court has ruled on that.  The decision is on

13   appeal.  And there's nothing -- I said it here on Page 3:

14              "What language in 522(p) suggests that the value

15              on the date the homestead was declared has any

16              relevance to the calculation?"

17         It doesn't.  It's not mentioned anywhere in the

18   statute.

19         THE COURT:  The other thing -- what the real issue

20   was in Rasmussen was that period of time between the date

21   that the debtor acquired their interest in the homestead

22   and when they filed the bankruptcy petition.  It was not

23   any post-petition increase in value.

24         MR. HARTMAN:  Correct.

25         THE COURT:  That's where Mr. White's argument kind

1  of disappears.  Because even in the dicta--and it may not

2  be total dicta because I'm looking at the <u>Rasmussen</u>

3  decision at Page 755, where the court said:

4          "The trustee contends that the interest in the

5          homestead that the debtors acquired during the

6          1215 days prior to the petition includes

7          appreciation."

8          What they're saying is okay, we acquired this

9  property more than three years ago.  We are entitled to the

10  pre-petition increase in value.  That's at least our

11  homestead is --

12          MR. HARTMAN:  Right.

13          THE COURT:  That does not change my analysis that

14  the amount of the exemption is determined on the date of

15  the filing and that post-petition appreciation belongs to

16  the trustee.

17          That's the fact that I have in front of me.  It's

18  a different set of facts than Judge Williamson had in front

19  of him.

20          MR. HARTMAN:  Right.

21          And let's take Mr. White's example just another

22  step further.  Let's say that on the 1214th day he bought

23  the property for a hundred and thirty thousand dollars, but

24  it had a 125,000-dollar mortgage on it.  And the property

25  appreciated in value up until the petition date to where it

1 was worth--let me do the math here--two hundred and fifty

2 thousand dollars.

3          He gets the benefit of that appreciation because

4 it's building up towards the cap.  And the property gets

5 sold, the first mortgage gets paid off, and he's protected

6 his hundred and twenty-five thousand dollars.  The trustee

7 can't touch it in that case.

8          THE COURT:  If it was worth, for example, 1000

9 days pre-petition that the equity was only sixty thousand

10 that he'd protect and it was increased to a hundred and

11 twenty-five thousand the date that he filed his petition,

12 he gets the benefit of that sixty-five thousand increase

13 during that period of time.

14          MR. HARTMAN:  And there's one more step in that

15 analysis that we can't lose --

16          THE COURT:  Because it's determined on the date of

17 the filing of the petition.

18          MR. HARTMAN:  But here's another step we shouldn't

19 lose sight of.

20          In your example, where on the petition date the

21 property is only worth a hundred and twenty-five thousand

22 dollars, the trustee is not going to administer that asset

23 and the debtor ends up keeping it.

24          But in order -- because --

25          THE COURT:  Which was the whole point of the

1  Vidvue.

2           MR. HARTMAN:  Right.

3           THE COURT:  That's what the debtors wanted there.

4           MR. HARTMAN:  And because --

5           THE COURT:  And they said on the petition date

6  this property is only worth X; therefore, it's mine because

7  the trustee only had the same position as a creditor under

8  Section 544.  And the BAP said no, look at all these cases.

9   You have to look under 541 not 544.  And the estate gets

10  the benefit of the post-petition appreciation.

11          MR. HARTMAN:  Right.

12          But we have -- and the final comment I have is

13  that we should take several steps back and look at the

14  bankruptcy policy.

15          It's a balancing.  You have on one side honest

16  debtors being entitled to a discharge and getting all of

17  their exemptions so that they have their fresh start.

18          On the other side, you give up your non-exempt

19  property so that there's something to benefit the

20  creditors.  That's sort of the quid pro quo in the overall

21  bankruptcy scheme;

22          And that policy is going to be furthered by the

23  court approving the sale and allowing this debtor to have

24  his one hundred and twenty-five thousand dollars.  But the

25  remainder is for the benefit of the creditors holding

1  allowed claims.

2          THE COURT:  Right.

3          MR. HARTMAN:   So if the Court has not other

4  questions, I'll sit down.

5          THE COURT:  No.  By the way, the court at Page 756

6  in <u>Rasmussen</u> said, referring to both <u>Sandler</u> and to <u>Blair</u>--

7  which are both Texas cases--noted:

8              "And both of those cases dealt with homesteads

9              acquired before 1250-day period and both concluded

10             that an increase in value due to appreciation

11             during that period"--now remember this is pre-

12             petition--"was not an interest acquired within the

13             meaning of Section 522(p)."  Therefore not subject

14             to the cap.

15             "This court is in agreement with the ultimate

16             holdings in both these cases; however, the court

17             does not agree that the interest that is acquired

18             by a debtor is ownership interest in the

19             homestead."  Once again, I think making a

20             distinction between the ownership interest in the

21             homestead and the equity.  "Rather, for reasons

22             discussed below, the court concludes that the term

23             interest means equity in the homestead acquired by

24             the debtor during the 1215-day period."

25             And that's consistent with the approach that we

1   use in Nevada; it's the equity and not the property.

2         And that's why I disagree with Sandler and Blair

3   which apparently found an defined interest as the fee

4   simple interest acquired by the debtor upon purchase of the

5   home.

6         Because if we find that, then the conclusion that

7   they may have arrived at regarding 522(p) may be correct

8   and Judge Williams then attempts to parse it out because he

9   sees, in my opinion, the distinction between the underlying

10  property and the acquisition of the homestead interest and

11  tries to arrive at some type of equitable balance.

12        Very difficult.  And I -- he has to do that if he

13  accepts the position about defining interest as the fee

14  simple interest rather than doing as both Judge Markell and

15  I have, is found that the homestead interest is a separate

16  interest that was acquired during that period.  Because

17  that makes the rest of the Code more easily to harmonize

18  exemptions;

19        If he acquired a homestead exemption that any

20  value of the increase in equity that it would increase your

21  homestead exemption, you get the benefit of up until the

22  date that you file the petition.  The exemption is

23  determined to 522 on the date that you file the exemption

24  and under 541 post-petition increase in value belongs to

25  the estate.  And it works.

1          Now you may disagree with the cap of 522(p) and

2     the language that was utilized--fair enough.  But that's

3     how I believe that they work together.

4          MR. HARTMAN:  Right.

5          THE COURT:  And that's the findings I'm going to

6     make.

7          It's a fascinating argument.  And I understand the

8     position.  But I don't think Rasmussen stands or is even

9     appropriate in the case I have before me;

10         Because there's no evidence at all that there was

11    any increase in value between the date that the debtor

12    acquired his homestead exemption in 2004 and the date that

13    he filed the petition;

14         Because that's exactly the same value that he

15    placed on it when he filed the first time.

16         MR. HARTMAN:  Right.

17         THE COURT:  So he's bound by his own admissions.

18         MR. HARTMAN:  Thank you, your Honor.

19         THE COURT:  That there was no increase in value.

20         That being said and understanding the argument

21    raised by debtor, and both on the factual and legal

22    analysis that I've employed, those are my findings and

23    conclusions that I am entering on the record pursuant to

24    7052;

25         That I believe the law is as I stated;

1          That even if you were to look at <u>Rasmussen</u> that

2     there is no evidentiary basis to establish that there was

3     any increase in the value of the equity from the time that

4     the debtor acquired it; or, for that matter, from the time

5     that the property was purchased--there's no evidence of

6     that--and between the time that he filed his first petition

7     and the time he filed the second petition;

8          And therefore the increase in value of the

9     property and any equity that may be available is available

10    to the trustee under the Ninth Circuit law that post-

11    petition appreciation of the property itself belongs to the

12    trustee for the benefit of the creditors;

13         Once creditors are paid, if there's any excess

14    that of course would go back to the debtor.  That's how the

15    Code works;

16         Whether one agrees or disagrees with it that's how

17    I believe that it works.  And you can harmonize all those

18    sections;

19         And as I said, I've made those findings and

20    conclusions under 7052 that incorporates, by reference,

21    Federal Rule of Civil Procedure 52;

22         There's been no objection to the sale itself;

23         And I find the sale is a proper exercise of the

24    trustee's business judgment;

25         The broker has been employed;

1          The commission is reasonable.  It can be split

2    among the realtors any way they see fit;

3      (Pause in proceedings)

4          THE COURT:  And I'm fully cog -- I assume that the

5    findings I made are probably dicta because they are

6    probably unnecessary just to rule in favor of the trustee's

7    motion to sell;

8          But since the issues were before me, I might as

9    well do it while we were here is how I look at it, Mr.

10   White.

11         MR. WHITE:  Well, your Honor, I -- if the Court's

12   ruling is turning on the fact that the schedules of the

13   debtor at the time, --

14         THE COURT:  Might not --

15         MR. WHITE:  -- we have evidence here now today

16   with the sales price that the property --

17         THE COURT:  My point is is that even the case you

18   rely upon, which is Rasmussen, only dealt with the pre-

19   petition appreciation in the value of the property.

20         And it was dicta.

21         I'm just making further distinctions.

22         What I am saying is that the homestead in this

23   case is a hundred and twenty-five thousand dollars;

24         That the post-petition appreciation of the value

25   of the property belongs to the estate;

1          That the sale has not been challenged;

2          It appears to be a proper exercise of the

3    trustee's business judgment;

4          And that the debtor is entitled to his homestead

5    exemption of a hundred and twenty-five thousand dollars;

6          And that's based upon my earlier ruling in July

7    and September, which remains unstayed and is clearly the

8    law of this case.

9          You've asked me, in a sense, to reconsider those

10   today, Mr. White.  I --

11         MR. WHITE:  Your Honor, no.

12         THE COURT:  I've looked at the new case law you

13   submitted;

14         I thought about it;

15         MR. WHITE:  Okay.

16         THE COURT:  And I'm not reconsidering that.

17         MR. WHITE:  All right.

18         What I would ask though is that since an earlier

19   order of this Court has directed the trustee to hold all of

20   the proceeds pending the outcome of the appeal in any

21   event, --

22         THE COURT:  Fair enough.

23         MR. WHITE:  -- that we have -- that your Honor

24   make a proviso or condition in the order that you're just

25   entering that the debtor has an opportunity to present

1  evidence of the value of the property on the petition date,

2  if that is part of your Honor's reasoning.

3        THE COURT:  No.  It's not -- my reasoning is the

4  exemption is determined on the date of the filing of the

5  petition.

6        The post-petition appreciation belongs to the

7  estate.

8        The valuation -- then I made a further

9  distinction.  I looked at the facts and looked at the

10 schedules, looked at the evidence I had before me;

11       And there wasn't an attempt to reopen it or to go

12 back to that;

13       Frankly --

14       MR. WHITE:  Well, I would just like --

15       THE COURT:  The pre-petition increase, if there

16 had been any, in the value of the thing maybe.  But I don't

17 have that;

18       It's determined the date of the filing;

19       It's two hundred and forty thousand dollars.  And

20 that's what we're dealing with.

21       And the exemption itself.  Remember it's a value

22 of the homestead.  And the value of the homestead is a

23 hundred and twenty-five thousand dollars.

24       And it doesn't matter what the value of the

25 property is because it's never going to be more than a

1  hundred and twenty-five thousand dollars on the date of the

2  filing of the petition.  So the value of the property

3  itself doesn't matter --

4            MR. HARTMAN:  Yeah.

5            THE COURT:  -- in this case.

6            MR. HARTMAN:  Your Honor, just for the record and

7  for clarification.  I think you just hit on it.

8            We may be talking about apples and oranges when

9  we're talking about pre-petition appreciation --

10           THE COURT:  We are.

11           MR. HARTMAN:  -- and so forth.

12           That the law says the exemption is determined on

13  the date the petition was filed.  522(p) was in effect that

14  day.  And therefore the exemption, by reason of the

15  supremacy clause, is a hundred and twenty-five thousand

16  dollars, --

17           THE COURT:  And that's what I've ruled.  I'm not

18  changing that.

19           MR. HARTMAN:  -- period.

20           THE COURT:  And I'm not changing that.

21           I was also pointing out that based upon the

22  schedules that even the Rasmussen theory, if applicable,

23  would not be applicable based upon the facts I had in front

24  of me;

25           And I'm not going to reopen it to look at facts

1  that aren't applicable;

2         It was just a further distinction I was drawing,

3  Mr. White;

4         The basis of my ruling is exactly the same that I

5  made in September.

6         MR. COPE:  Your Honor, is the trustee to hold the

7  net proceeds of the sale?

8         THE COURT:  Well, there is a --

9         MR. COPE:  Oh, it would be almost granting a --

10        THE COURT:  No, no.

11        MR. COPE:  -- stay.

12        THE COURT:  What is the prior order?

13        My prior orders remain in full force and effect,

14  whatever they state.

15        MR. HARTMAN:  Right.

16        MR. COPE:  Thank you.

17        THE COURT:  I am allowing the payment of the

18  brokers' fees and commissions.

19        MR. COPE:  Thank you, your Honor.

20        MR. HARTMAN:  Just for the record, your Honor --

21        THE COURT:  And any closing costs.

22        MR. HARTMAN:  Will the Court call for overbids?  I

23  don't think there are any.  But --

24        THE COURT:  Well, I should do that.

25        Is anybody in here interested in bidding on the

1   property located at 450 Alamosa Drive?

2      (Brief pause)

3         THE COURT:  There being no response, then, I

4   assume there was none.

5         Thank you, Mr. Hartman.

6         Then I am going to grant the motion to sell

7   subject to my prior orders, and allowing the payment of the

8   commission and any closing costs.

9         All right?

10        MR. HARTMAN:  Thank you, your Honor.

11        THE COURT:  Thank you.

12        Prepare the order, --

13        MR. COPE:  Thank you, your Honor.

14        THE COURT:  -- Mr. Cope.  Have counsel sign off

15  under Local Rule 9021.

16        Thank you all.

17        MR. COPE:  I will, your Honor.

18        THE COURT:  Every couple of months we get to argue

19  this.  It's just great.

20        COURTROOM DEPUTY:  All rise.

21     (Proceedings concluded at 11:18:58 a.m.)

22

23

24

25

48

1

2                              <u>CERTIFICATE</u>

3

4          I certify that the foregoing is a correct

5   transcript from the digital sound recording of the

6   proceedings in the above-entitled matter.

7

8   <u>/s/ Marjorie G. Davall</u>          <u>January 17, 2007</u>

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25