WILLIAM D. COPE, ESQ., #1711
WILLIAM D. COPE, LLP
595 Humboldt Street
Reno, Nevada 89509
Telephone: (775) 333-6694
Facsimile: (775) 333-6694
email: cope_guerra@yahoo.com

Attorney for Annabelle Savage, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In Re:

SCOTT K. GREENE,

            Debtor.
_____/

Case No.: BK-N-05-54727-GWZ
Chapter 7

**REPLY IN SUPPORT OF OBJECTION TO DEBTOR'S AMENDMENTS TO SCHEDULES**

Hearing Date:   November 10, 2010
Hearing Time:   10:00 a.m.
Time Requested:  10 minutes

    Annabelle Savage, duly appointed Chapter 13 Trustee ("Trustee") by and through her attorney, William D. Cope, Esq., hereby files her reply in support of objection to the amendments to Schedule A, Schedule C, and Summary of Schedules filed herein by Debtor, Scott Greene, ("Debtor").

**POINTS AND AUTHORITIES**

**I.   GREENE'S AMENDMENTS HAVE PREJUDICED THE TRUSTEE AND HER COUNSEL**

    Greene acknowledges that under the controlling authority of In re Arnold, 252 B.R. 778 (9th Cir. BAP 2000), an amendment must be conditioned on the payment of all administrative expenses incurred as a result of the Trustee's reliance on the Debtor's original schedules. However, Greene contends that the Trustee and her counsel suffered no prejudice as a result of any reliance on the original schedules, except for the prejudice resulting from the litigation of the post-petition appreciation issue. Greene further contends that regardless of the value of the property claimed in his original schedules, the Trustee would have incurred expenses to litigate the issue of the exemption cap under 11 U.S.C. § 522(p), and therefore that expenses incurred in connection with

that issue were not the consequence of Greene's delay in amending his schedules. Thus, Greene apparently concedes that the Trustee has been prejudiced at least to the extent that her claimed expenses relate to the post-petition appreciation issue, but disavows any responsibility for additional litigation expenses. However, Greene's Reply completely ignores the Trustee's argument as to why she and her counsel have been prejudiced as a result of Greene's belated filing of his amendments.

As the Trustee explained in her Objection to Debtor's Amendments to Schedules, until Greene amended his schedules, the Trustee had every right to rely on the original schedules for all purposes. As noted in the Trustee's objection, based upon the $240,000 valuation stated in Greene's original Schedule C, the value of the post-petition appreciation was $130,000. And as the Trustee explained, if the post-petition appreciation was $130,000, the most that Greene would ever have been entitled to, even if his claim were not subject to the $125,000 cap under § 522(p), would have been $162,000 (the value of the property on the date of the petition less the $78,000 mortgage). Since Greene received a payment of $125,000 at the time of the sale, the most that he would have been entitled to if he had not amended his schedules would have been $37,000. Greene has not disputed any of these facts, all of which are set forth in the Trustee's Objection.

It follows that prior to Greene's amendment of Schedule C (on April 19, 2010), all of the expenses that the Trustee had incurred (some of which are the subject of the Trustee's counsel's pending fee application) would have been payable from non-exempt property held by the Trustee. And if Greene had not amended his Schedule C, the Trustee would have retained approximately $65,000 after paying Greene the $37,000 remaining due on his homestead exemption. Thus, had Greene not amended Schedule C, the Trustee would have had approximately $65,000 in funds in the estate with which to pay the remaining administrative expenses, and to distribute to creditors. Accordingly, at all times when the administrative expenses were being incurred, the estate had sufficient non-exempt funds to pay such expenses in full. Under such circumstances, there can be no question that all of the litigation expenses were incurred by the Trustee in reliance on the fact that the estate had sufficient non-exempt property (consisting of the value of the post-petition appreciation) to cover such the expenses, and that such property would remain non-exempt

regardless of the outcome of the homestead litigation.

Although Greene's Reply advances no argument countering any of the foregoing points, it should be noted that there is no legal basis for concluding that the amended schedules have some sort of retroactive effect. To the contrary, as the court observed in In re Harris, 101 B.R. 210, 213 (Bky. E.D. Cal. 1989)(relied upon approvingly by the Ninth Circuit BAP in Arnold), it is not the trustee's burden to speculate as to what the debtor might claim in the future. As Harris explained, there is a "very practical problem facing trustees when debtors have either failed to claim assets as exempt or have made improper exemption claims.... Thus when he has taken appropriate action but is ultimately thwarted due to the debtor's overriding rights, debtor, having caused the trustee to act because of the debtor's initial negligence, should be required to reasonably compensate the trustee and reimburse him for his reasonable fees and expenses." Until Greene amended his Schedule C, the Trustee was required to treat the value of the sale proceeds represented by the post-petition appreciation as property of the estate, and to administer the estate in all respects in accordance with such classification.

## II.    GREENE'S DELAY IN AMENDING HIS SCHEDULES IS INEXPLICABLE

It should further be noted that Greene has no excuse for waiting more than four and one-half years to amend his schedules. Indeed, as early as the November 21, 2006, hearing on the Trustee's Motion to Sell Free and Clear of Lien, Greene contended that the property was worth more than $240,000 on the date he filed his petition. See, Transcript of Hearing on Motion to Sell Free and Clear of Lien, excerpts of which are attached hereto as **Exhibit "1"**, pp. 42-44. In view of such argument, Greene certainly should have amended Schedule C prior to the hearing if he believed he had grounds for doing so. But instead, Greene waited another three and one-half years before filing his amendment. During that whole period of time, the value of the sale proceeds represented by the post-petition appreciation ($130,000) remained property of the estate.

In his response to the Trustee's objection, Greene contends that "amending his Schedule C prior to the October 2, 2009, decision of the Ninth Circuit would have been largely a useless act. Debtor would have been out of pocket for the cost of an appraisal, yet would not have been entitled to an additional penny." However, Greene's assertion is incorrect for several reasons. First,

Greene did not need to obtain an appraisal to amend his schedules. As is shown by Greene's counsel's arguments at the 2006 hearing, he believed that the $370,000 sales price reflected the value of the property as of the petition date. See, Exhibit "1", p. 42:15.

Second, amending Schedule C would not have been a useless act because it was the only means by which Greene could put the Trustee on notice that he was claiming that there was no post-petition appreciation, and hence that there might be an issue as to whether the funds that the Trustee was relying on to pay ongoing administrative expenses might actually be part of the Debtor's homestead exemption. Had such an amendment been filed at an earlier date, the Trustee would have had an opportunity to determine whether to cease appellate litigation over the § 522(p) issue relating to the homestead cap because, in the event that Greene were to prevail as to that issue, the value of the post-petition appreciation might no longer be available to pay future administrative expenses. But the Trustee obviously had no reason to consider such matters because Greene did not amend Schedule C until April of 2010.

Greene also asserts that he did not previously amend Schedule C because his claims for an exemption in the amount of $240,000 "was sufficient to guarantee Debtor his full homestead as determined by this Court and, on appeal, by the district court (sic)." See, Greene's Response, p. 5:9. However, Greene's assertion is both legally irrelevant and factually incorrect. Greene's assertion is legally irrelevant because regardless of the amount of his original claim of exemption, the post-petition appreciation belonged to the estate until the date of the amendment, and thus was available to pay expenses of the estate incurred in reliance on the original schedules.

Greene's assertion that his original claim of exemption was $240,000 is also factually incorrect because, under Nevada law, he was only permitted to claim an exemption in the equity in his property. NRS 115.010(2). Since Greene claimed that the value of the property was $240,000 as of the date of his petition, and since he acknowledged in his original schedules that the property was subject to a mortgage in the amount of $78,000, Greene's original claim of exemption can only be interpreted to have been a claim for the amount of his equity in the property at the time when he filed his petition ($162,000). Thus, Greene's attempt to now suggest that he claimed an exemption in an amount greater than his equity in the property is belied by his own

original declarations with respect to the value of his claimed exemption.

Parenthetically, it is interesting to note that in his Response, Greene asserts that although he amended Schedule C to state a new value for the property ($370,000 versus $240,000), he did not amend his claim of exemption, which continues to be the same amount that he originally claimed. Response, p. 6:8. But if Greene did not intend to amend the amount of his claim of exemption, the amount of the claim remains $162,000, because that was all that he claimed on his original Schedule C. See Schwab v. Reilly, 130 S. Ct. 2652 (2010)(the fact that the debtor has equated the value of the claimed exemption with the estimated market value does not allow the debtor to exempt more than the amount of the claim, even if the value of the property ultimately proves to have been greater than estimated). Under such circumstances, it is clear that in order to increase the amount of his claim of exemption, Greene would have been required to amend his claim, and to affirmatively state that he is now seeking an exemption in an amount greater than the equity in the property that was represented in his original schedules.

### III. THE FACTS AVERRED IN THE DECLARATION OF DAVID RANKINE ARE COMPLETELY IRRELEVANT

Green also attempts to rely on the declaration of David Rankine, which, according to Greene, shows that "the Trustee, prior to any fee awards in this case, assured Mr. Rankine, then Debtor's co-counsel on the appeals, that he would not seek his fees or expenses from money that might be given to Mr. Greene." Therefore, according to Greene, "the Rankine declaration estopped the trustee from now deducting administrative expenses from Debtor's homestead." See, Greene's Response, p. 6:24-27. However, Green's reliance on the Rankine declaration only highlights Greene's mis-analysis of the issue.

Preliminarily, it should be noted that Greene has mischaracterized the Rankine declaration in a significant respect. Greene's argument omits references to two crucial sentences from the declaration. The declaration states that "I expressed my concern that fees not be paid from monies that might prove to be exempt. Mr. Cope responded that the estate had adequate resources to pay its counsel from sources other than the claimed homestead." Thus, Mr. Cope's statement plainly had reference only to funds that might ultimately be reclassified as exempt as a result of Greene's

appeal of the homestead issue, not as a result of some possible future amendment of Greene's schedules.

Moreover, Mr. Cope's statement that the estate had adequate resources to pay its counsel from sources other than the claimed homestead was absolutely correct. As discussed above, Greene's claim that his homestead should not be limited by the $125,000 cap in no way affected the characterization of the post-petition appreciation as property of the estate. Regardless of whether Greene won his appeal regarding the cap, the exemption would not include the post-petition appreciation.[1] Thus, it is indisputable that at the time when Mr. Cope represented that funds were available to pay fees from sources other than those that might, as a result of the appeals, become included within Greene's homestead, that representation was entirely true because, as this court ruled, and as the Ninth Circuit affirmed on appeal, the funds consisting of the post-petition appreciation were not part of the claimed homestead.

In view of the above, it is readily apparent that Greene has gone to considerable lengths to try to mask the pivotal fact that until his amendment, the post-petition appreciation was not covered by his homestead claim. Indeed, every part of Greene's argument ignores the status of the bankruptcy estate as of the date when the Ninth Circuit issued its decision. As of that date, Greene had prevailed in reversing the imposition of the Section 522(p) cap. But Greene failed to obtain a reversal of any aspect of this Court's ruling that all of the appreciation occurred post-petition, and therefore that the value of such appreciation was not included within the homestead exemption (even without the cap). Thus, as of the date of the Ninth Circuit's decision, the post-petition appreciation remained property of the estate, and Greene had failed to file anything to indicate that he had legal grounds for reclassifying the post-petition appreciation as pre-petition appreciation. Accordingly, Greene's argument is nothing but a misleading attempt to rewrite the history of this case.

Further, the expenses incurred by the Trustee resulted in a significant benefit to the estate. As a result of the Ninth Circuit's affirmance of this court's ruling with respect to the post-petition

---

[1] Greene argued on appeal that the post-petition appreciation did not belong to the estate, but the Ninth Circuit ruled against him on that specific issue.

appreciation issue, the estate was able to retain approximately $65,000 in funds at the end of the Ninth Circuit appeal, a portion of which could have been distributed to creditors if Greene had not amended his schedules. The Trustee did exactly what she should have done, and nothing more than what was required under the circumstances.

### IV. BANKRUPTCY RULE 4003 DOES NOT APPLY TO THE TRUSTEE'S OBJECTION

Lastly, Greene contends that the Trustee's objection is untimely under Rule 4003(b)(1). However, Greene's argument here is wrong because Rule 4003(b)(1) does not apply to the Trustee's objection to Greene's amendment. Rather, Rule 4003(b) is applicable, by its terms, only to objections to "the list of property claimed as exempt." The recent Supreme Court case of Schwab v. Reilly, 130 S.Ct. 2652 (2010) (cited by Greene in support of the mundane proposition that objections required under Rule 4003 must be timely made), plainly holds that Rule 4003(b) only applies to objections based upon (1) the fact that the property listed on schedule C is not exempt, or (2) the fact that the amount of the exemption listed in the column titled "Value of Claimed Exemption" exceeds the statutory limits. Id. at 2663.

In the present case, the Trustee has determined that it would not be feasible to pursue a challenge to Greene's amended valuation. Nor is the Trustee objecting on the ground that the amount of Greene's claim exceeds the statutory limits of the homestead exemption. The Trustee is only objecting to Greene's attempt to use the amendment to prevent the Trustee from paying administrative fees, and that objection has nothing to do with the information set forth in Schedule C of the Debtor's amendments. Accordingly, although Greene has ostensibly relied upon Schwab in support of his argument herein, the holding of that case apparently escaped his notice.

### V. CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that Greene should be required to pay all remaining administrative expenses.

DATED this 26th day of October, 2010.   WILLIAM D. COPE, LLP

By: /s/ William D. Cope
William D. Cope, Esq.

- 7 -

## LIST OF EXHIBITS

**Exhibit**                                                                                             **No. of Pages**

Exhibit "1."  Excerpts of Transcript of Hearing on Motion to Sell Free
              and Clear of Lien . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In Re:                    .    Docket No. BK-N 05-54727-GWZ
                          .
SCOTT K. GREENE,          . .  Reno, Nevada
                          .    November 21, 2006
       Debtor.            .    10:27:21 a.m.
. . . . . . . . . . .

HEARING
ON MOTION TO SELL FREE AND CLEAR OF LIEN;
PAYMENT OF SALES COMMISSION
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GREGG W. ZIVE
UNITED STATES BANKRUPTCY JUDGE

Electronic Court Recorder:    Sylvia Tilton

Transcription:                Typewrite Services Inc.
                              P.O. Box 5804
                              Sparks, Nevada 89432-5804

Proceedings recorded by digital sound recording, transcript produced by transcription service.

232

42

1           The commission is reasonable.  It can be split
2    among the realtors any way they see fit;
3           (Pause in proceedings)
4           THE COURT:  And I'm fully cog -- I assume that the
5    findings I made are probably dicta because they are
6    probably unnecessary just to rule in favor of the trustee's
7    motion to sell;
8           But since the issues were before me, I might as
9    well do it while we were here is how I look at it, Mr.
10   White.
11          MR. WHITE:  Well, your Honor, I -- if the Court's
12   ruling is turning on the fact that the schedules of the
13   debtor at the time, --
14          THE COURT:  Might not --
15          MR. WHITE:  -- we have evidence here now today
16   with the sales price that the property --
17          THE COURT:  My point is is that even the case you
18   rely upon, which is Rasmussen, only dealt with the pre-
19   petition appreciation in the value of the property.
20          And it was dicta.
21          I'm just making further distinctions.
22          What I am saying is that the homestead in this
23   case is a hundred and twenty-five thousand dollars;
24          That the post-petition appreciation of the value
25   of the property belongs to the estate;

43

1        That the sale has not been challenged;

2        It appears to be a proper exercise of the
3 trustee's business judgment;

4        And that the debtor is entitled to his homestead
5 exemption of a hundred and twenty-five thousand dollars;

6        And that's based upon my earlier ruling in July
7 and September, which remains unstayed and is clearly the
8 law of this case.

9        You've asked me, in a sense, to reconsider those
10 today, Mr. White. I --

11        MR. WHITE: Your Honor, no.

12        THE COURT: I've looked at the new case law you --
13 submitted;

14        I thought about it;

15        MR. WHITE: Okay.

16        THE COURT: And I'm not reconsidering that.

17        MR. WHITE: All right.

18        What I would ask though is that since an earlier
19 order of this Court has directed the trustee to hold all of
20 the proceeds pending the outcome of the appeal in any
21 event, --

22        THE COURT: Fair enough.

23        MR. WHITE: -- that we have -- that your Honor
24 make a proviso or condition in the order that you're just
25 entering that the debtor has an opportunity to present

44

1  evidence of the value of the property on the petition date,
2  if that is part of your Honor's reasoning.
3              THE COURT:  No.  It's not -- my reasoning is the
4  exemption is determined on the date of the filing of the
5  petition.
6              The post-petition appreciation belongs to the
7  estate.
8              The valuation -- then I made a further
9  distinction.  I looked at the facts and looked at the
10 schedules, looked at the evidence I had before me;
11             And there wasn't an attempt to reopen it or to go
12 back to that;
13             Frankly --
14             MR. WHITE:  Well, I would just like --
15             THE COURT:  The pre-petition increase, if there
16 had been any, in the value of the thing maybe.  But I don't
17 have that;
18             It's determined the date of the filing;
19             It's two hundred and forty thousand dollars.  And
20 that's what we're dealing with.
21             And the exemption itself.  Remember it's a value
22 of the homestead.  And the value of the homestead is a
23 hundred and twenty-five thousand dollars.
24             And it doesn't matter what the value of the
25 property is because it's never going to be more than a